**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1221**

_____

JOSE ANTONIO MARTINEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

------------------------------------

AMERICAN CIVIL LIBERTIES UNION,

Amicus Supporting Jurisdiction,

and

PIERRE RILEY,

Amicus Supporting Petitioner.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued: May 3, 2023                          Decided: November 16, 2023

_____

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and FLOYD, Senior Circuit Judge.

_____

Dismissed by published opinion.  Judge Rushing wrote the majority opinion, in which Chief Judge Diaz joined.  Senior Judge Floyd wrote an opinion concurring in the judgment.

─────────────

**ARGUED:**  Michael Evertsen Ward, ALSTON & BIRD, LLP, Washington, D.C., for Petitioner.  Robert Dale Tennyson, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian Boynton, Principal Deputy Assistant Attorney General, Carl McIntyre, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  Lee Gelernt, Anand Balakrishnan, New York, New York, Cody Wolfsy, Immigrants' Rights Project, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, San Francisco, California, for Amicus American Civil Liberties Union. Dimitar P. Georgiev-Remmel, Washington, D.C., Keith Bradley, SQUIRE PATTON BOGGS (US) LLP, Denver, Colorado, for Amicus Pierre Riley.

─────────────

RUSHING, Circuit Judge:

After Jose Antonio Martinez illegally reentered the United States, the Department of Homeland Security (DHS) reinstated the removal order previously entered against him. Martinez expressed fear of returning to his native country and was placed in withholding-only proceedings. The immigration judge and the Board of Immigration Appeals denied relief, and Martinez petitioned our Court for review within 30 days of the Board's decision. But that decision was not a "final order of removal." 8 U.S.C. § 1252(b)(1). Because Martinez did not timely file his petition within 30 days of any final order of removal, the Immigration and Nationality Act (INA) deprives us of jurisdiction to consider it.

I.

Martinez, a native and citizen of Honduras, entered the United States without inspection in 2004. DHS apprehended him in 2013 and placed him in removal proceedings. During those proceedings, Martinez expressed fear of the gangs in Honduras, who had targeted and killed his family members. He also admitted that, before he came to the United States, he had killed a man with a machete, was convicted of homicide, and spent seven years in prison as a result. An immigration judge ordered Martinez removed in 2018, and DHS removed him to Honduras in early 2019.

3

Two months later, Martinez illegally reentered the United States. DHS apprehended him again in 2020. Because Martinez had already been ordered removed, he was subject to the streamlined removal process for illegal reentrants.[1]

In such cases, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). An immigration officer simply obtains the alien's prior order of removal, confirms the alien's identity, and determines whether the alien's reentry was unauthorized. 8 C.F.R. § 241.8(a)(1)–(3). The alien receives written notice of the immigration officer's determination and the opportunity to contest it. *Id.* § 241.8(b). If the officer declines to reconsider his determination, he reinstates the prior removal order and "the alien shall be removed." *Id.* § 241.8(c); *see* 8 U.S.C. § 1231(a)(5) ("[T]he alien shall be removed under the prior order at any time after the reentry."). The alien has no right to a hearing before an immigration judge. 8 C.F.R. § 241.8(a).

Although an illegal reentrant may not challenge a reinstated removal order and may not pursue discretionary relief like asylum, *see* 8 U.S.C. § 1231(a)(5), he nevertheless may seek to prevent DHS from removing him to the particular country designated in his reinstated removal order. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021). Two avenues of relief are available: statutory withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and protection under regulations implementing the Convention Against

---

[1] Congress created this expedited removal process in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, § 305, 110 Stat. 3009-546, 598–599 (codified at 8 U.S.C. § 1231(a)(5)).

4

Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). Section 1231(b)(3)(A) prohibits the government from removing an alien to a country where his "life or freedom would be threatened . . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion." And the CAT forbids the government from removing an alien to a country where he is likely to be tortured. *See* 8 U.S.C. § 1231 note (United States Policy with Respect to Involuntary Return of Persons in Danger of Subjection to Torture); *see also* 8 C.F.R. § 208.16(c). But withholding of removal is not available via either path if "there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States." 8 U.S.C. § 1231(b)(3)(B)(iii); 8 C.F.R. § 208.16(d)(2); *cf.* 8 C.F.R. § 208.17 (deferral of removal under the CAT for aliens subject to mandatory denial of withholding of removal under 8 C.F.R. § 208.16(d)(2)).

The process for seeking statutory withholding or CAT protection goes as follows. When an alien subject to a reinstated removal order expresses fear of returning to his native country, an asylum officer will interview him. 8 C.F.R. § 241.8(e); *see id.* § 208.31(a)–(c). If the asylum officer determines that the alien has a reasonable fear of persecution or torture, he refers the case to an immigration judge for full consideration of the alien's entitlement to statutory withholding or CAT protection. *Id.* §§ 208.31(e), 1208.31(e). These are called "withholding-only" proceedings. *See Guzman Chavez*, 141 S. Ct. at 2282–2283. If, however, the asylum officer finds that the alien does not have a reasonable fear of persecution or torture, the alien is entitled to have that finding reviewed by an immigration judge. 8 C.F.R. §§ 208.31(g), 1208.31(g). If the immigration judge agrees

5

with the asylum officer, the alien is removed. *Id.* § 1208.31(g)(1). But if the immigration judge concludes that the alien does have a reasonable fear, then the immigration judge will conduct withholding-only proceedings to consider in full the alien's claim to withholding of removal or CAT protection. *Id.* § 1208.31(g)(2). A dissatisfied litigant can appeal the immigration judge's withholding-only decision to the Board. *Id.* § 1208.31(e), (g)(2)(ii).

In this case, the immigration officer reinstated Martinez's order of removal on January 15, 2020. Martinez did not contest the immigration officer's determination, but he expressed fear of persecution or torture in Honduras. The asylum officer interviewed Martinez and determined he had not established a reasonable fear of persecution or torture. Martinez sought review of that decision, and the immigration judge disagreed with the asylum officer, concluding that Martinez had shown a reasonable fear. As a result, Martinez's case was moved to withholding-only proceedings to determine whether he was entitled to statutory withholding or CAT protection.

Upon full consideration of Martinez's claims, the immigration judge denied relief. Based largely on Martinez's testimony in his initial removal proceedings that he had murdered a man with a machete, the immigration judge found serious reasons for believing that Martinez committed a serious nonpolitical crime before he arrived in the United States. As a result, Martinez was ineligible for withholding of removal under Section 1231(b)(3)(A) or the CAT. *See* 8 U.S.C. § 1231(b)(3)(B)(iii); 8 C.F.R. § 208.16(d)(2). The immigration judge also denied deferral of removal under the CAT, concluding Martinez had not shown that the Honduran government would acquiesce in his torture.

6

Martinez appealed, and on February 25, 2022, the Board affirmed. On March 3, 2022, Martinez filed a petition for review with this Court.

## II.

We have an independent obligation to assure ourselves of jurisdiction to decide an appeal. *See Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 122 (4th Cir. 2019). After receiving supplemental briefs from the parties on this topic, we conclude that we lack jurisdiction to resolve Martinez's petition for review because he did not file it within 30 days of a final order of removal.

## A.

We begin with the INA. Section 1252 authorizes us to review only "final order[s] of removal." 8 U.S.C. § 1252(a)(1); *see Amaya v. Rosen*, 986 F.3d 424, 429 (4th Cir. 2021) ("The [INA] limits this Court's jurisdiction to final orders of removal."). An order of removal is an order of an authorized official "concluding that the alien is deportable or ordering deportation."[2] 8 U.S.C. § 1101(a)(47)(A); *see Kouambo v. Barr*, 943 F.3d 205, 209 (4th Cir. 2019). That order becomes final when the Board of Immigration Appeals affirms it or when the time for seeking Board review expires, whichever comes first. *See* 8 U.S.C. § 1101(a)(47)(B)(i)–(ii). Under Section 1252's "zipper clause," once we have a final order of removal before us, we can consider along with it "all questions of law and

---

[2] Although this provision defines "order of deportation," in the IIRIRA Congress deemed "any reference in law to an order of removal . . . to include a reference to . . . an order of deportation." IIRIRA § 309, 110 Stat. at 3009-627; *see Salgado v. Garland*, 69 F.4th 179, 182 n.2 (4th Cir. 2023) (explaining that IIRIRA "replaced the term 'deportation' with 'removal'" (citing *Calcano-Martinez v. INS*, 533 U.S. 348, 350 & n.1 (2001))).

7

fact . . . arising from any action taken or proceeding brought to remove [the] alien from the United States." 8 U.S.C. § 1252(b)(9); *see Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1070 (2020). But review of such questions is "available only in judicial review of a final order" of removal. 8 U.S.C. § 1252(b)(9).

To obtain judicial review, an alien must file a petition for review within 30 days "of the final order of removal." *Id.* § 1252(b)(1); *see id.* § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."). The 30-day deadline is "'mandatory and jurisdictional' and is 'not subject to equitable tolling.'"[3] *Santos-de Jimenez v. Garland*, 53 F.4th 173, 174 (4th Cir. 2022) (quoting *Stone v. INS*, 514 U.S. 386, 405 (1995)).

---

[3] As the parties note, the Supreme Court recently held in *Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023), that the exhaustion requirement of Section 1252(d)(1) is not jurisdictional. We subsequently concluded that "the holding in *Santos-Zacaria* is limited to § 1252(d)(1) and the Supreme Court has not overruled *Stone*," therefore "we are bound to apply *Stone* unless and until the Supreme Court provides to the contrary." *Salgado*, 69 F.4th at 181 n.1; *see id.* at 180 (dismissing petition for lack of jurisdiction based on Section 1252(b)(1)). Accordingly, we deny the Government's motion for supplemental briefing on *Santos-Zacaria*.

More than three months after oral argument, the Government expanded its request for supplemental briefing. In a Notice of Supplemental Authority, the Government renounced its prior position on jurisdiction and adopted the opposite argument, asserting that we do have jurisdiction over this petition and asking to develop its new argument in the previously requested supplemental briefing. Our denial of the Government's motion for supplemental briefing disposes of this request as well.

8

B.

Martinez's petition does not satisfy these jurisdictional requirements because it was not filed within 30 days of a final order of removal. Three orders are potentially relevant here; we consider each possibility in turn.

1.

Consider first the Board's February 2022 withholding-only order, which denied Martinez statutory withholding and CAT relief. Martinez filed his petition for review within 30 days of that order. But it is not a final order of removal.

"A CAT order is not itself a final order of removal," *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020), and neither is a statutory withholding order, *see Guzman Chavez*, 141 S. Ct. at 2287 ("[R]emoval orders and withholding-only proceedings address two distinct questions."). Neither order "conclude[s] that the alien is deportable or order[s] deportation." 8 U.S.C. § 1101(a)(47)(A). Rather, "the order of removal is separate from and antecedent to a grant of withholding of removal" or CAT relief. *Guzman Chavez*, 141 S. Ct. at 2288. And an alien's eligibility for either form of relief does not "affect the validity" of the alien's removal order. *Nasrallah*, 140 S. Ct. at 1691; *Guzman Chavez*, 141 S. Ct. at 2288. After all, an order granting withholding or CAT relief only "prohibits DHS from removing the alien *to* [the] particular country [designated], not *from* the United States," so the removal order "remains in full force." *Guzman Chavez*, 141 S. Ct. at 2285. Because withholding-only orders do not affect removability, they are not orders of removal. *See Argueta-Hernandez v. Garland*, 73 F.4th 300, 302 (5th Cir. 2023) ("[O]rders denying CAT relief or withholding of removal are not orders of removal."); *Bhaktibhai-*

9

*Patel v. Garland*, 32 F.4th 180, 190 (2d Cir. 2022) ("Decisions made during withholding-only proceedings cannot qualify as orders of removal.").

Although statutory withholding and CAT orders are not themselves orders of removal, we nevertheless may review them as part of our review of a final order of removal. *See* 8 U.S.C. § 1252(b)(9); *Nasrallah*, 140 S. Ct. at 1691. So for us to exercise jurisdiction over the Board's withholding-only order, Martinez must identify another eligible order.

2.

Next take Martinez's 2018 removal order. It obviously qualifies as a final order of removal, because it "conclude[ed] that [Martinez] is deportable or order[ed] deportation." 8 U.S.C. § 1101(47)(A). But Martinez does not, and cannot, seek review of that order now. The 30-day deadline for filing a petition for review "runs from the date an *original* order of removal becomes final," not from the date that order is reinstated. *Mejia v. Sessions*, 866 F.3d 573, 589 (4th Cir. 2017). As a result, the time for seeking judicial review of the 2018 removal order has long passed.

3.

That leaves the 2020 decision reinstating Martinez's 2018 removal order, which we will call the reinstatement decision. Here we face two questions: First, is a reinstatement decision an order of removal? And second, when does a reinstatement decision become final?

We need not resolve the first question today. Our Court has previously exercised jurisdiction over petitions filed by aliens subject to reinstated removal orders, accepting the Government's position that a reinstatement decision is an "order of removal." *Velasquez-*

10

*Gabriel v. Crocetti*, 263 F.3d 102, 105 (4th Cir. 2001). Two of our sister circuits have questioned their similar precedents in view of more recent Supreme Court decisions. *See Ruiz-Perez v. Garland*, 49 F.4th 972, 976 (5th Cir. 2022); *Bhaktibhai-Patel*, 32 F.4th at 195–196. But we need not delve into that issue here. We can assume that a reinstatement decision is an order of removal and move on to the dispositive question of finality.

So, when does a reinstatement decision become final? The INA says a removal order becomes final upon the earlier of (1) "a determination by the Board of Immigration Appeals affirming such order," or (2) "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). An alien cannot appeal an immigration officer's reinstatement decision to the Board, so at first blush this definition appears inapposite.[4] But when a decision is not appealable to the Board, our Court has considered the ruling at the last available stage of agency review to be "the agency's 'final order' for purposes of judicial review." *Tomas-Ramos v. Garland*, 24 F.4th 973, 980 n.3 (4th Cir. 2022). The Second Circuit has adopted

---

[4] The imperfect fit between this definition of finality and a reinstatement decision does not mean, as Martinez's amici suggest, that we should look outside the INA to define finality. If anything, the mismatch might suggest that a reinstatement decision is not a final order of removal—but we leave that question for another day.

Even if we looked to general principles of administrative law as amici suggest, we would likely reach the same destination. A reinstatement decision is "the consummation of the agency's decisionmaking process" when it comes to illegal reentrants and determines their "rights or obligations" with respect to remaining in the United States. *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted). As we explain below, the Supreme Court has rejected the view that a reinstatement decision is not final until withholding-only proceedings are complete. Those proceedings do not affect *whether* an alien is removable but only *where* he may be sent.

a similar view, explaining that "the definition at § 1101(a)(47)(B) ties finality to the final stage of agency review available as of right," therefore "a reinstatement decision becomes final once the agency's review process is complete." *Bhaktibhai-Patel*, 32 F.4th at 192. An immigration officer's decision to reinstate a prior order of removal is definitive and not subject to further review by the agency. 8 C.F.R. § 241.8(a). So the reinstatement decision becomes final when the alien chooses not to contest it or, if the alien does contest it, when the immigration officer rejects the alien's objections. *See id.* § 241.8(a)–(c); *Bhaktibhai-Patel*, 32 F.4th at 192–193.

Martinez and his amici contend that finality is different for illegal reentrants who express a reasonable fear of persecution or torture. They insist that, in those cases, the immigration officer's reinstatement decision becomes final only after the conclusion of the alien's withholding-only proceedings. In view of recent Supreme Court decisions, we cannot agree.

The Supreme Court has clarified in *Nasrallah* and *Guzman Chavez* that "removal orders and withholding-only proceedings address two distinct questions." *Guzman Chavez*, 141 S. Ct. at 2287; *see Nasrallah*, 140 S. Ct. at 1691 (discussing CAT orders). A removal order decides whether the alien should be removed from the United States; statutory withholding and CAT orders take the alien's removability as a given and decide only *where* the alien may be removed to. *Nasrallah*, 140 S. Ct. at 1691; *Guzman Chavez*, 141 S. Ct. at 2285. Even if withholding-only relief is granted, the removal order "is not vacated or otherwise set aside" but "remains in full force." *Guzman Chavez*, 141 S. Ct. at 2285. Withholding-only relief "'does not disturb the final order of removal,' 'affect the

12

validity of the final order of removal,' or otherwise 'merge into the final order of removal.'" *Guzman Chavez*, 141 S. Ct. at 2288 (quoting *Nasrallah*, 140 S. Ct. at 1691). As a result, removal orders and withholding-only proceedings "end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Id.* at 2287. Likewise, "an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal." *Id.* at 2288.

Martinez counters that *Guzman Chavez* did not address whether an order of removal is final for purposes of judicial review under Section 1252. Instead, that decision answered only whether an order of removal is "administratively final" for purposes of Section 1231, which regards detention pending removal. Martinez's amici echo his argument, contending that finality for purposes of detention is not the same as finality for purposes of judicial review.

Our Court has squarely rejected that position. In *Guzman Chavez*, we held that finality for purposes of Section 1252 is the same as finality for purposes of Section 1231. *See Guzman Chavez v. Hott*, 940 F.3d 867, 881 (4th Cir. 2019), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 141 S. Ct. at 2271. We explicitly "decline[d] to graft a two-tiered system of finality onto immigration cases involving withholding-only proceedings," "under which a reinstated removal order is simultaneously final for purposes of detention under § 1231 and not final for purposes of judicial review under § 1252." *Id.*; *see also id.* at 881 n.11 ("[O]ne position that § 1101(a)(47)(B) clearly cannot support is . . . that finality means something different under those two provisions."). In its decision

13

reversing our opinion, the Supreme Court did not disturb that ruling. *See, e.g.*, *Guzman Chavez*, 141 S. Ct. at 2285 n.6. Indeed, although *Nasrallah* and *Guzman Chavez* did not address jurisdiction under Section 1252, both decisions defined finality by reference to Section 1101(a)(47), the same provision that defines finality in Section 1252. *See Nasrallah*, 140 S. Ct. at 1691; *Guzman Chavez*, 141 S. Ct. at 2288 (applying *Nasrallah*'s interpretation of finality). In sum, because the Supreme Court has clarified that a removal order's finality for purposes of Section 1231 does not depend on withholding-only proceedings—and because we have held that finality for purposes of Section 1231 and Section 1252 are the same—the finality of a removal order for purposes of judicial review also cannot depend on withholding-only proceedings.

We recently reached a similar conclusion when examining the finality of an order of removal in a different context. In *Salgado v. Garland*, the Board denied cancellation of removal but remanded the case to the immigration judge to consider Salgado's eligibility for voluntary departure. 69 F.4th at 181. Salgado did not appeal that order but waited until the immigration judge resolved the voluntary departure question. At that point he filed his petition, reasoning that the order denying cancellation of removal did not become final until the immigration judge ruled on his voluntary departure. We disagreed and dismissed the petition as untimely. *Id.* at 181–184. The Board's order denying cancellation of removal was a final order of removal. *Id.* at 182. And an order resolving the availability of voluntary departure could not affect the finality of that order, we reasoned, because voluntary departure "does not affect Salgado's removability—it affects only the manner of his exit." *Id.* at 182–183 (internal quotation marks and brackets omitted). Similar logic

14

applies here. An order that does not affect an alien's removability—like statutory withholding and CAT relief—cannot affect the finality of the removal order.

The Second and Fifth Circuits have reached the same conclusion, overturning their contrary precedent. In *Argueta-Hernandez v. Garland*, the Fifth Circuit held that a reinstatement decision "becomes final the moment the prior order is reinstated." 73 F.4th at 303. The court concluded that *Nasrallah* and *Guzman Chavez* "implicitly overruled" that circuit's precedent holding that a reinstatement decision is not final until withholding-only proceedings have ended. *Id.* (internal quotation marks omitted). Because the withholding-only order itself was not an order of removal, the Fifth Circuit found the petition for review in that case untimely and dismissed for lack of jurisdiction. *Id.* at 302, 304.

Similarly, in *Bhaktibhai-Patel v. Garland*, the Second Circuit concluded that the petitioner did not challenge any judicially reviewable final order of removal. 32 F.4th at 190. In view of *Nasrallah* and *Guzman Chavez*, the court reasoned that "[d]ecisions made during withholding-only proceedings," including the immigration judge's negative reasonable fear determination in that case, "cannot qualify as orders of removal." *Id.* Overturning its precedent, the Second Circuit also held that withholding-only proceedings "do not impact the finality of an order of removal for the purpose of judicial review under § 1252." *Id.* at 194. As a result, "[w]hen it comes to an illegal reentrant, both the prior order of removal and DHS's decision to reinstate that order are definitive and unreviewable within the agency—and therefore final—before withholding-only proceedings even begin." *Id.*

15

We agree with the Second and Fifth Circuits that withholding-only orders do not affect the finality of a decision reinstating a prior order of removal. *See also Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1148 (10th Cir. 2023) (Tymkovich, J., concurring) (reasoning that *Nasrallah* and *Guzman Chavez* "seriously undermined" Tenth Circuit precedent about the finality of reinstated removal orders and calling for that court to reevaluate its precedent en banc). Martinez notes that the Ninth Circuit has concluded its precedent—holding that a reinstated removal order does not become final until the completion of withholding-only proceedings—is not "clearly irreconcilable" with *Nasrallah* and *Guzman Chavez*. *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1043 (9th Cir. 2023) (internal quotation marks omitted). As the Ninth Circuit explained, its precedent distinguishes between finality for purposes of detention, in Section 1231, and finality for purposes of judicial review, in Section 1252. *See id.* at 1051; *see also Kolov v. Garland*, 78 F.4th 911, 918–919 (6th Cir. 2023) (adhering to Sixth Circuit precedent on the same basis). Because our precedent holds that finality for purposes of Section 1231 is the same as finality for purposes of Section 1252, we do not find that reasoning persuasive.

Nor does our decision in *Tomas-Ramos* compel a contrary conclusion. As Martinez points out, there we exercised jurisdiction over a petition for review that was filed more than a year after a reinstatement decision. *See Tomas-Ramos*, 24 F.4th at 979–980. But the Court did not address its jurisdiction in *Tomas-Ramos*. And "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011); *cf. United States v. Campbell*, 22 F.4th 438, 448 (4th Cir.

16

2022) (reasoning that questions which "merely lurk in the record," "neither brought to the attention of the court nor ruled upon," are "not to be considered as having been so decided as to constitute precedents" (internal quotation marks omitted)).  To be sure, the Court explained that the decision of the immigration judge in that case, rather than a Board decision, was the agency's final word because "the streamlined process that governs reasonable fear determinations does not include an appeal to the Board." *Tomas-Ramos*, 24 F.4th at 980 n.3.  But nowhere did the Court address its jurisdiction or whether withholding-only proceedings affect the finality of a reinstatement decision.

Martinez and his amici also emphasize the "strong presumption" in favor of judicial review of agency action. *Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021).  And while we are mindful of the presumption, it "is just that—a presumption." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).  Like other default rules used in interpreting statutes, the presumption recedes when "the statute's 'language or structure'" is to the contrary. *Salinas*, 141 S. Ct. at 698 (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)).  The language and structure of Sections 1101(a)(47) and 1252, as interpreted by the Supreme Court and our Court, foreclose judicial review of petitions filed more than 30 days after a final order of removal, and finality is not contingent on the results of withholding-only proceedings.

C.

Applying these principles, Martinez's petition for review was untimely and we lack jurisdiction to consider it.  The immigration officer reinstated Martinez's 2018 removal order on January 15, 2020.  The same day, Martinez elected not to contest the immigration

17

officer's determination and the reinstatement decision became final.  Martinez then had 30 days to file his petition for review.  But he filed his petition over two years later, in March 2022.  The pendency of his withholding-only proceedings did not extend his time to file. So his petition for review was untimely.

As a fallback position, Martinez and his amici ask us to apply our jurisdictional ruling only to future cases but not in this case.  They claim that applying our decision here would violate Martinez's due process rights because he filed his petition in accord with what he understood to be the applicable law at the time.  This argument essentially requests an equitable exception to the INA's 30-day filing deadline.  But we have "no authority to create equitable exceptions to jurisdictional requirements."  *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *see Santos-de Jimenez*, 53 F.4th at 174 ("This time limit is 'mandatory and jurisdictional' and is 'not subject to equitable tolling.'" (quoting *Stone*, 514 U.S. at 405)).  We are bound to follow "[t]he age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists," despite the "injustice" that may result "in particular cases."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 937 n.4 (2009) (rejecting argument that the Court's decision would unfairly punish those who had relied on a time limit established by precedent because "the Court must nonetheless decide the jurisdictional question before it irrespective of the possibility of harsh consequences").

In a variation on that theme, Martinez invites us to apply the factors identified in *Chevron Oil v. Huson*, 404 U.S. 97, 106–107 (1971), for assessing the retroactive

18

application of a judicial ruling regarding a statute of limitations. We have observed that subsequent Supreme Court precedent "cast serious doubt upon the practice of departing from the traditional rule of retroactive applications," even questioning whether *Chevron Oil* "has lost all vitality" in view of later cases. *Fairfax Covenant Church v. Fairfax Cnty. Sch. Bd.*, 17 F.3d 703, 710 (4th Cir. 1994). But regardless of the merits of *Chevron Oil*, courts have rightly refused to apply that framework to jurisdictional decisions. *See Nunez-Reyes v. Holder*, 646 F.3d 684, 691 (9th Cir. 2011) (en banc) ("[I]n cases in which the new rule of law strips the courts of jurisdiction, the courts must apply that new rule of law retroactively."); *see also Felzen v. Andreas*, 134 F.3d 873, 877 (7th Cir. 1998). *Chevron Oil* was meant to address the "substantial inequitable results" that would occur if the Court applied its statute of limitations decision retroactively. 404 U.S. at 108. But "[e]quitable considerations are altogether irrelevant when a court lacks adjudicatory power." *Felzen*, 134 F.3d at 877.

## III.

The INA deprives us of jurisdiction to resolve Martinez's petition for judicial review. Martinez did not file his petition within 30 days of any final order of removal, and precedent dictates that the statutory filing deadline is jurisdictional. Accordingly, the petition for review and Martinez's related motion for judicial notice are

*DISMISSED*.

19

FLOYD, Senior Circuit Judge, concurring in the judgment:

Today's decision aligns with prior pronouncements of this Court in which we described the 30-day deadline as both "mandatory and jurisdictional." *See, e.g.*, *Salgado v. Garland*, 69 F.4th 179, 181 & n.1 (4th Cir. 2023); *Santos-de Jimenez v. Garland*, 53 F.4th 173, 174 (4th Cir. 2022). But the Supreme Court recently cast doubt on our characterization of the deadline as "jurisdictional." After we heard oral argument in this case, the Supreme Court decided *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), which clarified when rules are to be deemed jurisdictional. *Santos-Zacaria* dealt with a different subsection of 8 U.S.C. § 1252, which allows judicial review of final orders of removal "only if" the noncitizen "has exhausted all administrative remedies available." 8 U.S.C. § 1252(d)(1). The Court reiterated that a rule is jurisdictional only when Congress "clearly states" it is jurisdictional and when the rule "sets the bounds of the 'court's adjudicatory authority.'" *Santos-Zacaria*, 598 U.S. at 416 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)). Non-jurisdictional rules, on the other hand, "govern how courts and litigants operate within those bounds." *Id.* The distinction matters. Courts "cannot grant equitable exceptions to jurisdictional rules" and "must enforce jurisdictional rules *sua sponte*, even in the face of a litigant's forfeiture or waiver." *Id.*

The Supreme Court in *Santos-Zacaria* concluded that § 1252(d)(1) is not jurisdictional for two reasons. First, the exhaustion provision "is a quintessential claim-processing rule." *Id.* at 417. Second, it lacks any jurisdictional language. *Id.* at 418. By contrast, five other provisions within § 1252 and in many other immigration laws plainly

20

state that "no court shall have jurisdiction" or "the court shall not have jurisdiction" to review certain matters. *Id.* at 418–19.[1]

Both rationales apply here. Beginning with the second, in both § 1252(b)(1) and (d)(1), "Congress eschewed such plainly jurisdictional language." *Id.* at 419. The contrast between the "unambiguous jurisdictional terms" in nearby subsections and the text of § 1252(b)(1) and (d)(1) "show that Congress would have spoken in clearer terms if it intended" for § 1252(b)(1) and (d)(1) "to have similar jurisdictional force." *Id.* (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012)) (cleaned up). The neighboring provisions with clear jurisdictional language "were enacted at the same time," making the omission from (b)(1) and (d)(1) all the more conspicuous. *Id.* As to the first rationale, both exhaustion requirements and filing deadlines function as claim-processing rules. *Id.* at 417 ("[A]n exhaustion requirement . . . is a quintessential claim-processing rule."); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435–36 (2011) ("Filing deadlines . . . are quintessential claim-processing rules."). Failure to abide by a claim-processing rule does not deprive a court of jurisdiction unless Congress clearly attaches jurisdictional consequences to the rule. *See Gonzalez*, 565 U.S. at 141–42.

Thus, *Santos-Zacaria* calls into question our treatment of the 30-day deadline as jurisdictional. This Court has relied on *Stone v. INS*, 514 U.S. 386 (1995), to treat the

---

[1] *Santos-Zacaria*, 598 U.S. at 419 n.5 (citing 8 U.S.C. §§ 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (b)(9), (g), 1182(a)(9)(B)(v), (d)(3)(B)(i), (d)(12), (h), (i)(2), 1158(a)(3), 1227(a)(3)(c)(ii), 1229c(f), 1255a(f)(4)(C), 1225(b)(1)(D)).

deadline as jurisdictional. *See, e.g., ante* at 8 & n.3. But *Stone* predates a recent line of cases, beginning with *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), that brought "some discipline" to the use of the term "jurisdictional" after courts too loosely applied the term to mandatory rules. *Santos-Zacaria*, 598 U.S. at 421 (quoting *Henderson*, 562 U.S. at 435). The Supreme Court has repeatedly confirmed since then that "[j]urisdictional requirements mark the bounds of a 'court's adjudicatory authority.'" *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022) (quoting *Kontrick*, 540 U.S. at 455) (30-day limit to file petition for review in Tax Court is not jurisdictional). Non-jurisdictional rules simply tell parties to "'take certain procedural steps at certain specified times' without conditioning a court's authority to hear the case on compliance with those steps." *Id.* (quoting *Henderson*, 562 U.S. at 435). Indeed, the Ninth Circuit recently held that, in light of *Santos-Zacaria*, § 1252(b)(1) cannot be deemed jurisdictional. *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1047 (9th Cir. 2023) ("[A]lthough we previously relied on *Stone* to hold that § 1252(b)(1) was a jurisdictional rule, that reasoning is now 'clearly irreconcilable' with the Supreme Court's intervening reasoning in *Santos-Zacaria*.").

In short, both the exhaustion requirement of § 1252(d)(1) and the 30-day deadline of § 1252(b)(1) lack any jurisdictional language. Both are claim-processing rules. And neither § 1252(d)(1) nor § 1252(b)(1) touches upon the "adjudicatory authority" of the federal courts.

The majority may be correct that Martinez did not timely file his petition within 30 days of a final order of removal. It is probably true that statutory withholding of removal

and relief under the Convention Against Torture do not affect the underlying "final order of removal." *See ante* at 15. But that conclusion does not address whether the 30-day rule is jurisdictional. *Santos-Zacaria* strongly suggests it is not. It makes sense that our adjudicatory power would exist independent of a petitioner's compliance with filing deadlines. This Court's jurisdiction is not a light switch that suddenly turns off on day 31.

Today's decision will have serious consequences on future petitioners.[2] It means they cannot obtain judicial review when, for instance, reinstatement proceedings violate their due process rights. Today's decision also departs from the "well-settled" and "strong presumption" favoring judicial review of administrative action, including in the immigration context. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *McNary v. Haitian Refugee Ctr. Inc.*, 498 U.S. 479, 496, 498 (1991)). And the absence of judicial review makes little sense when considering that withholding and CAT proceedings often take months or even years to conclude—long past the 30-day mark. In § 1252, Congress merely sought to "consolidate" judicial review of removal orders and, yes, prescribe deadlines and exhaustion requirements. *Id.* at 1070. But there is no support for the proposition that Congress meant the deadline to doubly function as a countdown clock on our jurisdiction.

---

[2] In Martinez's case, even if we had jurisdiction, the bottom-line result would not likely change. I am doubtful that Martinez would be granted an exception to circumvent the 30-day deadline, which remains a mandatory rule, even if it does not bear on our jurisdiction. And even if this Court found a reason to overlook the deadline, I do not think Martinez would be entitled to relief on the merits of his petition.

That said, I respectfully concur in the judgment, recognizing this panel is bound by this Court's previous treatment of § 1252(b)(1) as jurisdictional, unless and until this Court en banc or the Supreme Court says otherwise.