In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2284

F.J.A.P.,

*Petitioner*,

*v.*

MERRICK GARLAND, Attorney
General of the United States,

*Respondent*.

———————————

Petition for Review of a Decision of the
Board of Immigration Appeals.
No. A000-000-000

———————————

ARGUED SEPTEMBER 7, 2023 — DECIDED FEBRUARY 27, 2024

———————————

Before BRENNAN, ST. EVE, and JACKSON-AKIWUMI, *Circuit
Judges*.

ST. EVE, *Circuit Judge*. Thirteen years ago, F.J.A.P.[1] was re-
moved from the United States. Upon his return to El Salvador,

———————————

[1] We refer to the petitioner with an initialed pseudonym to protect his
identity. *See Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007).

he endured months of petty extortion by the gang MS-13. Then that extortion escalated. The gang demanded $2,000 by the next day or they would kill F.J.A.P. and his family. F.J.A.P. fled—first to a relative's home nearby and then back to the United States. It was not long before U.S. officials discovered his presence and reinstated his original removal order. F.J.A.P. then applied for withholding-only relief under the Convention Against Torture, which an immigration judge granted. The Board of Immigration Appeals reversed, and F.J.A.P. petitions for review. Today we address whether a court of appeals can review F.J.A.P.'s claim for relief.

## I. Background[2]

F.J.A.P. first entered the United States from El Salvador in 2000. After he pleaded guilty to a misdemeanor and later violated parole, the Department of Homeland Security ("DHS") removed him to El Salvador in 2010.

F.J.A.P. remained in El Salvador for four years. While there, he lived with his father in the village of Las Trancas and drove to Universidad Gerardo Barrios in Usulutan to attend college classes. He also worked as a taxi driver to earn extra money.

Eventually, MS-13 began extorting F.J.A.P. for money while he drove back and forth between Las Trancas and Usulutan. To avoid trouble, he complied with their demands

---

[2] Because several cases pending before this circuit present the same jurisdictional issue, we circulated this opinion under Circuit Rule 40(e) among all active circuit judges. A majority of judges did not wish to rehear the case en banc. Chief Judge Sykes and Judges Easterbrook, Brennan, and Kirsch voted in favor of rehearing en banc. Judge Kolar did not participate in consideration of the rehearing question.

for $20 a week. Then the trouble intensified. Two members of the gang came to F.J.A.P.'s home, handed him a cell phone, and told him someone wanted to speak with him. When F.J.A.P. took the phone, the person on the line claimed to be in prison and demanded $2,000 by the following day or the gang would "kill you all."

F.J.A.P. reported the demand and threat to the police in a formal complaint and then went into hiding. He lived with a relative thirty minutes away from Las Trancas, never leaving the house, until returning to the United States.

Not long after he arrived for the second time in the United States, F.J.A.P.'s cousin called to tell him that MS-13 was "looking for both of [them]." Then, in 2015, F.J.A.P. learned that the gang had murdered that same cousin in front of his pregnant wife. F.J.A.P. believes his cousin was murdered because he refused to divulge F.J.A.P.'s location.

Eventually, law enforcement again detained F.J.A.P., and DHS reinstated his order of removal on January 22, 2020. After he expressed fear for his life if he returned to El Salvador, F.J.A.P. was placed in withholding-only proceedings. At the initial level of review, an asylum officer found that F.J.A.P. did not have a reasonable fear of persecution or torture.

The immigration judge disagreed, determining that F.J.A.P. had a credible claim he would be tortured if DHS returned him to El Salvador. In granting F.J.A.P.'s application for withholding under the Convention Against Torture (CAT), the immigration judge reasoned that his testimony was credible for its consistency and corroboration.

The immigration judge based his decision to grant CAT relief on the following facts: F.J.A.P. had been called by a

seemingly high-ranking member of MS-13, F.J.A.P.'s life was threatened, and the gang's demand was high—$2,000. The opinion further relied on a 2019 Human Rights Report describing the violence and brutality of MS-13, its control of the country and the roadways, and the government corruption in El Salvador, making it unlikely that F.J.A.P. could avoid the gang if he returned to the country. The immigration judge also credited the fact that F.J.A.P. had reported the extortion to the police and then fled, finding it likely that MS-13 would retaliate against this behavior. In light of these facts, the immigration judge granted CAT relief on July 7, 2020.

The government appealed this decision to the Board of Immigration Appeals ("Board"). The Board reversed the immigration judge's decision to grant CAT relief in a brief, two-page order, finding that the immigration judge's decision was "based on assumptions and a series of hypotheticals." It stated that the judge's determination that F.J.A.P. was likely to be tortured or killed was an unsupported prediction. Specifically, the Board found three clearly erroneous "hypothetical suppositions." First, the Board dismissed any finding related to the phone call F.J.A.P. received demanding $2,000, reasoning that the record contained no evidence that the caller actually was a high-ranking gang member. Second, the Board concluded that there was insufficient evidence that the gang had any interest in harming F.J.A.P. And third, the Board discounted any personal threat F.J.A.P. might face because the 2019 Human Rights Report established only general corruption throughout El Salvador.

On this basis, the Board vacated the immigration judge's order granting relief and ordered F.J.A.P. removed to El Salvador on June 14, 2021. F.J.A.P. petitioned the Seventh Circuit

to review that decision on July 13, 2021. We issued a stay on his removal until the resolution of that petition. While awaiting a decision on this petition, F.J.A.P. requested that the Board reopen proceedings due to ineffective assistance of counsel. The Board denied that request and F.J.A.P. has separately petitioned this court for review of that denial.

## II. Analysis

F.J.A.P. challenges the Board's reversal of CAT relief. He argues that the Board misapplied clear error review and lacked substantial evidence to support reversal.

In response, the government initially argued that we lack jurisdiction because F.J.A.P.'s petition was untimely, coming more than 30 days after the reinstatement of his removal order. The government has since withdrawn that argument, conceding that § 1252(b)(1)'s 30-day filing deadline began to run at the conclusion of agency withholding proceedings.

In supplemental briefing shortly before oral argument, the government also argued for the first time that § 1252(b)(1) is a mandatory claims-processing rule, not a jurisdictional rule. *Stone v. INS* explained that the predecessor statute to § 1252(b)(1) was jurisdictional. 514 U.S. 386, 405 (1995). Relying on *Stone*, our circuit precedent similarly holds that § 1252(b)(1)'s filing deadline is jurisdictional. *Sankarapillai v. Ashcroft*, 330 F.3d 1004, 1005 (7th Cir. 2003); *see also Chavarria-Reyes v. Lynch*, 845 F.3d 275, 277 (7th Cir. 2016). We are aware that the Supreme Court's recent decision in *Santos-Zacaria v. Garland* called the jurisdictionality of § 1252(b)(1) into question, but it did not directly overrule *Stone*. 143 S. Ct. 1103, 1113 (2023) (finding that § 1252(d)(1)'s exhaustion requirement is nonjurisdictional). The government's argument has merit. *See*

*Alonso-Juarez v. Garland*, 80 F.4th 1039, 1046–47 (9th Cir. 2023) (holding that § 1252(b)(1) is a nonjurisdictional claims-processing rule); *Argueta-Hernandez v. Garland*, 87 F.4th 698, 705 (5th Cir. 2023) (same); *see also Martinez v. Garland*, 86 F.4th 561, 574 (4th Cir. 2023) (Floyd, J., concurring in the judgment) (noting that *Santos-Zacaria* "strongly suggests" the 30-day deadline is a claims-processing rule). *But see Salgado v. Garland*, 69 F.4th 179, 181 & n.1 (4th Cir. 2023) (holding that § 1252's filing deadline is jurisdictional); *see also Kolov v. Garland*, 78 F.4th 911, 917 & n.4 (6th Cir. 2023) (citing *Stone* for the proposition that the filing deadline is "mandatory and jurisdictional" and declining to consider whether *Santos-Zacaria* has called that holding into question). But until *Stone* is overturned by the Court itself, we must continue to apply it. *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

With that, we must independently assure ourselves of our jurisdiction, which we review de novo. *Villa v. Barr*, 924 F.3d 370, 372 (7th Cir. 2019).

**A. Jurisdiction**

Under 8 U.S.C. § 1252(a)(1), we have jurisdiction to review "final order[s] of removal." When a reinstated order of removal becomes "final" is crucial because, under 8 U.S.C. § 1252(b)(1), a "petition for review must be filed not later than 30 days after the date of the final order of removal."

F.J.A.P. filed his petition with this court on July 13, 2021, 29 days after the agency concluded withholding proceedings on June 14, 2021, but almost a year and a half after his order of removal was reinstated in January 2020. So, if a reinstated order of removal becomes final on the day issued, regardless of placement in withholding proceedings, F.J.A.P. filed too

late. But if a reinstated order of removal becomes final for purposes of judicial review under § 1252 only after the conclusion of withholding proceedings, as both parties now agree, F.J.A.P. timely filed his petition for review.

### 1. Relevant Statutory and Regulatory Scheme

Before we can determine when the 30-day filing deadline expired in F.J.A.P.'s case, we must review the relevant statutory and regulatory provisions implicated in his petition.

### a. Statutory History

Congress passed the Immigration and Nationality Act ("INA") in 1952 and repeatedly amended it in the decades that followed. Four acts shaped the specific law governing F.J.A.P.'s case, including two significant overhauls to the INA in 1996: the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). AEDPA streamlined the process for removing noncitizens convicted of certain crimes, referred to as the criminal alien bar. 8 U.S.C. § 1252(a)(2)(C). At the same time, AEDPA defined "order of deportation" as an agency decision "concluding that the alien is deportable or ordering deportation." *Id.* § 1101(a)(47)(A). That definition explains that orders of deportation "become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." § 1101(a)(47)(B).

IIRIRA changed "deportation" and its variants to "removal" throughout the INA, *see, e.g.,* § 1252(a), although AEDPA's definition in § 1101(a)(47) retained the original "deportation" language. *See Kolov*, 78 F.4th at 923–24 (Murphy, J.,

concurring). IIRIRA also streamlined the reinstatement process for removing noncitizens already subject to orders of removal who later reenter the country illegally. 8 U.S.C. § 1231(a)(5). Once DHS determines that a noncitizen has reentered the country illegally, the prior order is reinstated and is "not subject to being reopened or reviewed." *Id.* Finally, IIRIRA established direct review of a "final order of removal" by a court of appeals, *id.* § 1252(a)–(b), and added a "zipper clause," unifying into one petition all challenges "arising from any action taken or proceeding brought to remove an alien." *Id.* § 1252(b)(9). The Supreme Court recently explained that these changes expedited judicial review "[b]y consolidating the issues arising from a final order of removal, eliminating review in the district courts, and supplying direct review in the courts of appeals." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020).

Two years after IIRIRA, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") implemented Article III of the international Convention Against Torture. *See id*. As a signatory, the United States agreed not to remove a noncitizen to a particular country where that noncitizen demonstrates a likelihood of torture in that country. The resulting decision not to remove is referred to as CAT relief. FARRA implemented that treaty obligation by "provid[ing] for judicial review of CAT claims 'as part of the review of a final order of removal pursuant to section 242 of the [INA] (8 U.S.C. 1252).'" *Id.* (quoting 112 Stat. 2681–822, note following § 1231).

Then, in 2005, the REAL ID Act further codified protections for those noncitizens who might face torture if returned to a particular country. It added a specific provision that "a petition for review filed with an appropriate court of appeals

in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture." 8 U.S.C. § 1252(a)(4); *see also Nasrallah*, 140 S. Ct. at 1693 ("[A]s a result of the 2005 REAL ID Act, § 1252(a)(4) now provides for direct review of CAT orders in the courts of appeals.").

### b. Statutory and Regulatory Impact on Proceedings

Read together, these four Acts prioritize efficient removal on the one hand and judicial review on the other. This case highlights the tension between those two priorities.

IIRIRA's streamlining effect extends to any noncitizen who, like F.J.A.P., has previously been ordered removed and subsequently reenters the United States without permission. § 1231(a)(5). As part of that streamline, the noncitizen cannot appeal within the agency, *Torres-Tristan v. Holder*, 656 F.3d 653, 655 & n.1 (7th Cir. 2011) (citing § 1231(a)(5)), or apply for asylum, *Cruz-Martinez v. Sessions*, 885 F.3d 460, 463 (7th Cir. 2018). Judicial review of a reinstated order is limited to (1) whether a prior order of removal exists, (2) whether the noncitizen is the person previously ordered removed, and (3) whether the noncitizen reentered the U.S. without permission. *Villa*, 924 F.3d at 373 (citing 8 C.F.R. § 241.8).

Despite limited review of reinstated removal orders, the INA and FARRA ensure access to withholding-only relief if the noncitizen fears persecution or torture. The INA's implementing regulation, 8 C.F.R. § 1208.31, outlines procedures for relief for "any alien … whose … removal order is reinstated under [8 U.S.C. § 1231(a)(5)] who, in the course of the … reinstatement process, expresses a fear of returning to the country of removal." There are two paths to withholding-only

relief: reasonable fear of persecution,[3] and reasonable fear of torture (or CAT relief).

For their part, the implementing regulations ensure that when a noncitizen is ordered removed, if he expresses fear of returning to the country of removal, he is referred to an asylum officer for a reasonable fear screening interview. 8 C.F.R. § 1208.31(c)–(d). If the asylum officer finds a reasonable fear, she refers the noncitizen to an immigration judge for withholding-only review, which is then reviewable by the Board. *Id.* § 1208.31(e). If, however, the asylum officer finds no reasonable fear, she still refers the noncitizen to an immigration judge for reevaluation of reasonable fear. *Id.* § 1208.31(f). If the immigration judge agrees with the asylum officer, that decision concludes agency review of the noncitizen's fear. *Id.* § 1208.31(g). But if the immigration judge disagrees and finds a reasonable fear, the noncitizen will proceed to withholding proceedings, reviewable by the Board. *Id.*

The REAL ID Act in turn makes these decisions reviewable by a court of appeals. § 1252(a)(4). Indeed, the Supreme Court recently confirmed the availability of judicial review of the agency's CAT determinations in *Nasrallah*. 140 S. Ct. at 1690.

---

[3] Withholding due to fear of persecution, or statutory withholding, focuses on persecution due to certain protected characteristics. *See* § 1231(b)(3)(A); 8 C.F.R. § 1208.31(c). Courts often refer to both statutory withholding and CAT relief generally as withholding-only relief. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 184 n.3 (2d Cir. 2022). Because F.J.A.P. only petitions for review of the agency's CAT determination, this opinion uses either CAT or withholding to describe the proceedings.

Coming full circle, IIRIRA's zipper clause streamlines judicial review of agency determinations regarding removal orders and relief. 8 U.S.C. § 1252(b)(9). Recall, however, that reinstated orders of removal receive only minimal review, *Villa*, 924 F.3d at 373, and that a petitioner must file a petition for review with the court of appeals "not later than 30 days after the date of the final order of removal," § 1252(b)(1).

### 2. Seventh Circuit Precedent

We have previously exercised jurisdiction over petitions from the reinstatement of a removal order under § 1252, holding that a reinstatement order is an "order of removal." *See Villa*, 924 F.3d at 373 (citing *Torres-Tristan*, 656 F.3d at 656). And along with the limited review of reinstatement orders described above, we have reviewed associated withholding-only orders. *See Cruz-Martinez*, 885 F.3d at 463; *Almutairi v. Holder*, 722 F.3d 996, 1002 (7th Cir. 2013). Until now, we have concluded, with minimal explanation, that § 1252(b)(1)'s 30-day deadline ran from the conclusion of agency withholding proceedings. *See, e.g., Garcia-Arce v. Barr*, 946 F.3d 371 (7th Cir. 2019) (exercising jurisdiction when the petition was filed within 30 days of the Board's withholding-only order, but more than 30 days after reinstatement of the removal order). Until recently, every other circuit agreed with that view. *See Garcia v. Sessions*, 856 F.3d 27, 35 (1st Cir. 2017); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 144 (2d Cir. 2008); *Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018); *Tomas-Ramos v. Garland*, 24 F.4th 973, 980 n.3 (4th Cir. 2022); *Luna-Garcia de Garcia v. Barr*, 921 F.3d 559, 565 & n.4 (5th Cir. 2019); *Martinez v. Larose*, 968 F.3d 555, 563 (6th Cir. 2020); *Lara-Nieto v. Barr*, 945 F.3d 1054, 1058 (8th Cir. 2019); *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1186 (10th

Cir. 2015); *Jimenez-Morales v. Att'y Gen.*, 821 F.3d 1307, 1308 (11th Cir. 2016).

### 3. Circuit Split

Two recent Supreme Court decisions, *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), and *Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021), have caused some circuits to reconsider whether they have jurisdiction to review CAT orders for removal reinstatements where the petition for review is filed more than 30 days after the reinstatement of the removal order. *Nasrallah* narrowed "final orders of removal" for purposes of the criminal alien bar in § 1252(a)(2)(C), holding that a noncitizen subject to removal under this statute can still petition for review of withholding proceedings even though he cannot challenge the factual basis of his final order of removal. 140 S. Ct. at 1691. One year later, in *Guzman Chavez*, the Court held that removal orders are "administratively final" for purposes of pre-removal detention even if withholding proceedings are ongoing. 141 S. Ct. at 2285.

Relying on these decisions, the Second and Fourth Circuits have broken from their precedent to hold that § 1252(b)(1)'s 30-day statute of limitations begins to run upon reinstatement of a removal order, regardless of whether DHS subsequently places the noncitizen in withholding proceedings. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180 (2d Cir. 2022); *Martinez v. Garland*, 86 F.4th 561 (4th Cir. 2023).[4]

---

[4] In two cases before the Second Circuit, the panel has ordered briefing on whether *Santos-Zacaria v. Garland*, 143 S. Ct. 1103 (2023), calls into question the Second Circuit's holding in *Bhaktibhai-Patel*, 32 F.4th at 190–91. *See* Order at 2, *Cerrato-Barahona v. Garland*, No. 22-6349 (2d Cir. July 12, 2023); Order at 2, *Castejon-Paz v. Garland*, No. 22-6024 (2d Cir. July 12, 2023).

The Second Circuit concluded that "[d]ecisions made during withholding-only proceedings cannot qualify as orders of removal" and withholding orders are therefore not final orders of removal for purposes of § 1252(b)(1). *Bhaktibhai-Patel*, 32 F.4th at 190–91. Instead, "a reinstatement decision becomes final once the agency's review process is complete," at which time the 30-day filing window begins to run. *Id.* at 192–93. Though noting that AEDPA's definition of when an order of deportation becomes final in § 1101(a)(47)(B) "does not squarely apply" to reinstatement decisions, the panel nevertheless concluded that the *intent* behind the definition was to "tie[] finality to the final stage of agency review" and meant the same thing as "administratively final" in § 1231(a)(1)(B) and defined in *Guzman Chavez*. *Id.* at 192–94.

The Fourth Circuit relied upon circuit precedent to reach the same conclusion. The circuit had previously considered § 1101(a)(47)(B) to mean that orders not subject to agency review, such as reinstated orders of removal, become "final orders" for purposes of judicial review at the last *available* stage of agency review. *Martinez*, 86 F.4th at 568 (citing *Tomas-Ramos v. Garland*, 24 F.4th 973, 980 n.3 (4th Cir. 2022)). The court went on to conclude that *Guzman Chavez v. Hott*, 940 F.3d 867, 881 (4th Cir. 2019), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 141 S. Ct. at 2271, which held that § 1231 and § 1252(b)(1) finality are equivalent, dictated that § 1252(b)(1) finality, like § 1231 finality, "also cannot depend on withholding-only proceedings." *Martinez*, 86 F.4th at 569.

In contrast, the Fifth, Sixth, Ninth, and Tenth Circuits have recently held that reinstated orders of removal become final for purposes of judicial review upon the conclusion of CAT proceedings. *Argueta-Hernandez*, 87 F.4th at 705–06; *Kolov*, 78

F.4th at 919; *Alonso-Juarez*, 80 F.4th at 1056; *Arostegui-Maldonado v. Garland*, 75 F.4th 1132 (10th Cir. 2023).[5] The Fifth Circuit reasoned that a contrary conclusion would force noncitizens to file premature petitions and "have disastrous consequences on the immigration and judicial systems." *Argueta-Hernandez*, 87 F.4th at 706.[6] Each panel distinguished *Guzman Chavez*'s definition of final based on context: finality for purposes of detention is not finality for purposes of judicial review. *Id.*; *Kolov*, 78 F.4th at 919; *Alonso-Juarez*, 80 F.4th at 1050; *Arostegui-Maldonado*, 75 F.4th at 1143. The Supreme Court itself explicitly identified this distinction and limited its interpretation of administrative finality to § 1231. *Guzman Chavez*, 141 S. Ct. at 2285 n.6. Both the Ninth and Tenth Circuits also pointed out that *Nasrallah* preserved CAT review. *Alonso-Juarez*, 80 F.4th at 1050 ("[T]he Court reached this conclusion largely to avoid precluding judicial review where Congress had not explicitly precluded such review."); *Arostegui-*

---

[5] The Third Circuit, in two unpublished opinions, has concluded both that § 1252(b)(1)'s filing deadline runs from the date the removal order is final even when withholding-only proceedings are pending, *Farooq v. Att'y Gen.*, No. 20-2950, 2023 WL 1813597 (3d Cir. Feb. 8, 2023), and that the filing deadline begins to run only when withholding-only proceedings are final, if applicable, *Duenas v. Att'y. Gen.*, No. 22-3024, 2023 WL 6442601 (3d Cir. Oct. 3, 2023).

[6] Earlier in 2023, the Fifth Circuit held that § 1252(b)(1)'s 30-day filing deadline begins to run upon reinstatement of a removal order, regardless of whether DHS subsequently places the noncitizen in withholding proceedings. *Argueta-Hernandez v. Garland*, 73 F.4th 300 (5th Cir. 2023), *withdrawn and superseded on reh'g*, 87 F.4th 698 (5th Cir. 2023). A few months later, the same Fifth Circuit panel withdrew the first opinion and replaced it with a new one, this time holding that the 30 days begins to run at the conclusion of withholding proceedings.

*Maldonado*, 75 F.4th at 1142–43. Ultimately, each of these circuits found that their own circuit precedent preserved judicial review and neither *Nasrallah* nor *Guzman Chavez* clearly invalidated that precedent. *Argueta-Hernandez*, 87 F.4th at 706; *Kolov*, 78 F.4th at 919; *Alonso-Juarez*, 80 F.4th at 1050–51; *Arostegui-Maldonado*, 75 F.4th at 1143.

### 4. Statutory Analysis

Because of this circuit split, we ask whether *Nasrallah* and *Guzman Chavez* define "final" for purposes of judicial review in § 1252(b)(1). Concluding that they do not, we turn to the text of § 1252 for guidance on the meaning of finality to determine if we should reassess our existing precedent, which holds that the 30-day deadline runs from the completion of withholding-only proceedings.

#### a. Supreme Court Decisions

*Nasrallah* preserved withholding-only review for noncitizens subject to removal under the criminal alien bar by narrowing the meaning of "final orders of removal" under § 1252(a)(2)(C). Generally, the criminal alien bar prevents noncitizens who have committed certain crimes from obtaining judicial review of factual challenges to their "final orders of removal" (although they may still bring constitutional and legal challenges to those orders). *Nasrallah*, 140 S. Ct. at 1687–88. *Nasrallah* addressed whether this bar also restricts factual challenges to agency decisions regarding CAT relief. The Supreme Court held that it did not, reasoning that the statute precluded factual challenges to "final order[s] of removal," but "[a] CAT order is not itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah*, 140 S. Ct. at 1691

(quoting § 1101(a)(47)(A)). The Court further held that for purposes of this statutory bar, "final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Id.* DHS's determinations in CAT proceedings do not impact the validity of the final order of removal, so those determinations "do[] not merge into the final order of removal for purposes of §§ 1252(a)(2)(C)–(D)'s limitation on the scope of judicial review." *Id.* at 1692.

Because Congress did not explicitly foreclose judicial review of CAT orders, the Court would not interpret the statute to do so implicitly. *Id.* In fact, *Nasrallah* very clearly grounds its division between orders of removal and CAT orders on Congress's explicit intent in § 1252(a)(4) that CAT orders be subject to judicial review. 140 S. Ct. at 1693. *Nasrallah* even warned lower courts against interpreting its decision as limiting judicial review of withholding relief. *Id.* ("In short, our decision does not affect the authority of the courts of appeals to review CAT orders."). And by pointing out Congress's intent that CAT claims be "part of the review of a final order of removal," *id.* at 1690 (quoting 112 Stat. 2681–822), *Nasrallah* contemplates that CAT review be one component of the *review* of a final order of removal, even if the order of removal itself is distinct, leaving open the possibility that, when that component is incomplete, the entire order is not final for purposes of judicial review.

In *Guzman Chavez*, the Supreme Court held that, for noncitizens in withholding proceedings, like F.J.A.P., a reinstatement order becomes "administratively final" immediately upon reinstatement. 141 S. Ct. at 2285. Specifically, the Court found that noncitizens, subject to reinstatement but

awaiting withholding-only decisions, had been "ordered re-moved" within the meaning of 8 U.S.C. § 1231 and therefore could be detained. *Id.* at 2284–85. For purposes of that deten-tion, the removal period begins when a reinstatement order becomes administratively final for two reasons. First, Con-gress explicitly used "administratively final" in the text of the statute. § 1231(a)(1)(B). "By using the word 'administra-tively,'" the Court explained, "Congress focused our attention on the *agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court." *Guzman Chavez*, 141 S. Ct. at 2284.

Second, *Guzman Chavez* further emphasized that pending decisions in noncitizens' withholding proceedings do not make their removal orders any less "administratively final." *Id.* at 2285. In other words, reasonable fear proceedings do not impact the validity of the underlying removal order. Those proceedings may dictate "*where* an alien may be removed. It says nothing, however, about the antecedent question *whether* an alien is to be removed." *Id.* at 2286. It is that antecedent question—not the details of removal—that makes an order "administratively final" and justifies detention.

The definition of administrative finality for purposes of § 1231 cannot be imported into the definition of final in § 1252(b)(1), for several reasons. *Guzman Chavez* dealt with de-tention of immigrants under § 1231 and 8 U.S.C. § 1226, not judicial review in § 1252. In fact, the Supreme Court specifi-cally noted that its decision in *Guzman Chavez* did not take a position on the correct interpretation of "final[ity]" under § 1252. 141 S. Ct. at 2285 n.6 (declining to interpret "final order of removal" as used in § 1252(b)(1) because it "uses different language than § 1231 and relates to judicial review of removal

orders rather than detention").[7] Importing the meaning of "administratively final" into § 1252(b)(1) ignores the context of the Supreme Court's ruling in *Guzman Chavez* and dismisses Congress's explicit language.

The Court itself highlighted contextual differences by explicitly limiting its holding to the context of detention, distinguishing it from the use of "final order of removal" in § 1252(b)(1). It insisted on expressing no view regarding the meaning of that phrase in § 1252 for two textual reasons: First, the language of the two provisions is different; § 1231 uses "administratively final," while § 1252 uses "final order of removal." And second, § 1252 "relates to judicial review of removal orders rather than detention." *Guzman Chavez*, 141 S. Ct. at 2285 n.6.

The difference in language used by Congress is significant. Equating finality in § 1231 with § 1252(b)(1) renders "administratively" superfluous. *See City of Chicago v. Barr*, 961 F.3d 882, 898–99 (7th Cir. 2020) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (cleaned

---

[7] The dissent interprets *Guzman Chavez*'s footnote 6 to leave unresolved only whether a reinstated order of removal is a final order of removal for purposes of judicial review. *See infra* at 17–20. But the Court's citation to Guzman Chavez's brief includes page 26, which exclusively argues that reinstated orders of removal become final upon the completion of withholding proceedings and cites circuit court decisions holding just that. 141 S. Ct. at 2285 n.6 (citing Resp. Br. at 24–26 & n.8). If the Court were not leaving open the question of when a reinstatement order becomes final for purposes of judicial review under § 1252, there would be no need to cite page 26 of Guzman Chavez's brief.

up) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001))). This principle guides *Guzman Chavez*'s rejection of definitional similarity between § 1252 and § 1231 and it also guides us.

The Court's opinion in *Guzman Chavez* made clear the role the word "administratively" played in § 1231: "By using the word 'administratively,' Congress focused our attention on the *agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court." *Guzman Chavez*, 141 S. Ct. at 2284. In other words, for the purpose of § 1231, the Court contrasted administrative finality—being finished with agency review—with ordinary finality—being finished with judicial review. *See also* Final, *Black's Law Dictionary* (11th ed. 2019) (defining final as "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated"). But importing *that* definition of finality into § 1252 would put petitioners in an impossible bind when seeking judicial review because § 1252 prohibits judicial review of an order of removal *until* it is "final." § 1252(a)(1). So concluding that § 1252's "final" is controlled by § 1231's definitions of "administratively final" and "final" creates a paradox. Under § 1252 an order is not reviewable in court until it is "final," but under § 1231 an order is not "final" until it has been reviewed in court. In context, allowing *Guzman Chavez* to control our interpretation of finality in § 1252 leads to incoherent results.

For these reasons, we find that neither *Nasrallah* nor *Guzman Chavez* dictate that reinstated orders of removal become final for purposes of § 1252(b)(1) judicial review at reinstatement.

### b. Statutory Text

Our precedent treats reinstated orders of removal as final orders of removal for purposes of judicial review under § 1252(a) and (b). *See Villa*, 924 F.3d at 373; *Lemos v. Holder*, 636 F.3d 365, 366 (7th Cir. 2011) (citing *Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002)).

Even before *Nasrallah*, this circuit held that CAT orders are separate from orders of removal and therefore cannot themselves be considered final orders of removal. *Wanjiru v. Holder*, 705 F.3d 258, 264 (7th Cir. 2013) (distinguishing between "final orders of removal" for purposes of the criminal alien bar and finality for purposes of judicial review in § 1252(a) and (b)). *Nasrallah* later confirmed this position. 140 S. Ct. at 1691. Furthermore, we have previously held that a petition filed within 30 days of the completion of withholding proceedings is timely. *Eke v. Mukasey*, 512 F.3d 372, 377–78 (7th Cir. 2008). To assure ourselves that we have jurisdiction, we revisit that holding.

When Congress provides an explicit definition of a statutory term, that definition controls. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020). Yet the INA's definition of "final" offers little help when considering a petition from a reinstated order of removal. Section 1101(a)(47)(B), again, ties finality to review by the Board of Immigration Appeals. This definition only contemplates orders subject to review by the Board and is therefore inapposite. *Accord Ortiz-Alfaro*, 694 F.3d at 958; *Luna-Garcia*, 777 F.3d at 1185. Nor does *Guzman Chavez*'s definition of "final" in § 1231 apply to § 1252(b)(1), as explained above.

Because neither § 1101 nor § 1231 determine when a reinstated order of removal is final for purposes of judicial review under § 1252, we take a fresh look at the statute, relying on common tools of statutory interpretation, including the ordinary understanding of the word, context, and statutory structure. *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020). In doing so, we keep in mind the "strong presumption favoring judicial review of administrative action." *Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021) (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)).

*Plain meaning.* We interpret statutory language according to "ordinary, contemporary, common meaning," unless Congress has explicitly dictated another interpretation. *Melvin*, 948 F.3d at 852 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)). The Oxford English Dictionary (2d ed. 1989) offers two relevant definitions of "final": 1) "marking the last stage of a process; *leaving nothing to be looked for or expected*; ultimate;" and 2) "putting an end to something …; putting an end to strife or uncertainty; not to be undone, *altered*, or revoked; conclusive." (emphasis added). Similarly, the Supreme Court recently relied on contemporary popular dictionaries to explain the meaning of "final decision" in the context of judicial review of Social Security Administration determinations, concluding that "the phrase 'final decision' clearly denotes some kind of terminal event." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 & n.8 (2019); *see also Waetzig v. Halliburton Energy Servs., Inc.*, 82 F.4th 918, 923 n.5 (10th Cir. 2023) (comparing the legal definition of "final" with the definition in Webster's New International Dictionary of the English Language).

In the context of a reinstated order of removal, while the order itself may be unreviewable and so "ultimate," a CAT

order nonetheless alters and provides additional certainty for that reinstated order. *See Ortiz-Alfaro*, 694 F.3d at 959. In fact, although a CAT order does not determine *whether* a noncitizen can be removed, it does determine *where* that noncitizen can be sent. The indeterminacy of *where*, while CAT proceedings are pending, suggests that the reinstated order might yet leave something "to be looked for or expected," subject to possible alteration. Consequently, the plain meaning of "final" points us toward the conclusion that a reinstatement order does not become final for purposes of judicial review until the agency has also concluded withholding proceedings.

This understanding of finality aligns with our previous decisions to exercise jurisdiction over a noncitizen's petition after the agency concluded withholding proceedings. In *Eke*, we held that "the immigration authorities were not finished with Eke's case until the [Board]'s final decision" in withholding proceedings. 512 F.3d at 377–78. The final decision in Eke's withholding proceedings reflected that the agency was finished, at which time we had jurisdiction over the removal and withholding order. *Id.*

The plain meaning of "final" also tracks legal understanding. Black's Law Dictionary defines final as "last; conclusive; definitive; terminated; completed;" and in reference to legal actions, "a judgment is 'final' if no further judicial action … is required" (6th ed. 1990). But a reinstatement order *does* require further agency action when a noncitizen enters withholding proceedings. Although the noncitizen has been determined deportable, the agency's work is not completed, and it may not remove the noncitizen until agency withholding review is complete. *See* 8 C.F.R. § 1208.5(a) (explaining that a noncitizen cannot be removed "before a decision is rendered

on his or her … application").[8] As the Supreme Court made clear in *Nasrallah*, the noncitizen "may be removed at any time to another country where he or she is not likely to be tortured" *after* an order granting CAT relief has been issued. 140 S. Ct. at 1691 (quoting 8 C.F.R. § 1208.17(b)(2)); *see also* 8 C.F.R. § 1208.17(b)(2) ("The immigration judge shall also inform the alien that removal *has been deferred* only to the country in which it has been determined that the alien is likely to be tortured, and that the alien may be removed at any time to another country where he or she is not likely to be tortured." (emphasis added)). Even after a reinstated order of removal is administratively final, the noncitizen placed in withholding proceedings may not be removed "until the reasonable fear and withholding of removal proceedings are complete." *Luna-Garcia*, 777 F.3d at 1183. The agency must yet determine the range of possible locations to which the noncitizen can be deported—in other words, "further … action" delays finality. Final agency action for purposes of judicial review must "'mark the consummation of the agency's decisionmaking process,' and it must determine 'rights or obligations' or occasion 'legal consequences.'" *Id.* at 1185 (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). Only when withholding proceedings are complete have "the rights, obligations, and legal consequences of the reinstated removal order" been fully established. *Id.*

---

[8] 8 C.F.R. § 1208.5(a) uses the term "asylum applications." 8 C.F.R. § 1208.1(a)(1) explains that applications for asylum and withholding relief are referred to collectively throughout the Regulation as "asylum applications."

*Presumption of review.* The plain meaning of the statute comports with the principle of statutory construction that presumes congressional intent in favor of judicial review. *Smith*, 139 S. Ct. at 1776 (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986)). This strong presumption applies equally to the reviewability of immigration statutes. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069–70 (2020) (citing *Kucana v. Holder*, 558 U.S. 233, 251 (2010)). The presumption is not irrebuttable, but that burden of rebuttal is "heavy." *Mach Mining, LLC*, 575 U.S. at 486.

To overcome that burden, the statute's language or structure must indicate a clear intent by Congress to foreclose judicial review. *Smith*, 139 S. Ct. at 1776–77. Discretionary decisions left to the agency, for example, may not be subject to judicial review unless a petitioner raises a constitutional claim or question of law. §§ 1252(a)(2)(B)–(C); *see Kucana*, 558 U.S. at 248.

Congress, however, explicitly provided for judicial review of CAT orders. As *Nasrallah* explained, § 2242(d) of FARRA granted jurisdiction to review CAT claims along with removal orders. 140 S. Ct. at 1693. Both the 2005 REAL ID Act and § 1252(a)(4) of the INA further solidified courts of appeals' authority to review CAT orders. *Id.*

Furthermore, our interpretation honors Congress's streamlined process created by IIRIRA and AEDPA. Section 1252(b)(9)'s zipper clause consolidates our review of withholding proceedings with our review of final orders of removal; it does not *limit* that review. Later congressional actions, particularly the addition of § 1252(a)(4), confirm that Congress did not intend to foreclose judicial review of CAT orders. It wanted *efficient* review.

Because of these clear indications from Congress, we choose a reasonable interpretation of § 1252(b)(1) that comports with both the preservation of review and a streamlined review process. Other interpretive paths violate one or both of these principles by foreclosing review of CAT orders related to reinstated removal orders altogether, or by establishing an inefficient process in which petitions must be filed prematurely.

An interpretation that forecloses review of CAT orders cannot stand; it directly contradicts the presumption of review, a presumption supported by the language of the INA. The dissent claims to comply with the presumption of reviewability because Congress explicitly foreclosed review of reinstated orders of removal. *See infra* at 20. But its interpretation forecloses review of withholding orders as well, despite the lack of clear congressional intent to do so. Our decision regarding *when* an order of removal becomes final will determine *what* can be reviewed. If a petition for review of a CAT order associated with a reinstated removal order must be filed within 30 days of that reinstatement, review of most—if not all—CAT orders will be foreclosed. *See Martinez*, 86 F.4th at 574 (Floyd, J., concurring) (noting that "withholding and CAT proceedings often take months or even years to conclude"). But Congress has not explicitly foreclosed the review of withholding decisions associated with those reinstated orders. In fact, the Supreme Court has stated that although § 1231(a)(5) "'generally foreclose[s] discretionary relief from the terms of the reinstated order,'" the statute "does not, however, preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Guzman Chavez*, 141 S. Ct. at 2282 (quoting *Fernandez-Vargas v.*

*Gonzales*, 548 U.S. 30, 35 (2006)); *see also Fernandez-Vargas*, 548 U.S. at 35 n.4.

Inefficient review is similarly incompatible with the explicit provisions of the INA's zipper clause, intended to streamline judicial review. Preserving review of CAT claims in cases of reinstated removal orders would require noncitizens to file premature and incomplete petitions seeking review of not-yet-complete withholding proceedings in order to meet § 1252(b)(1)'s 30-day filing deadline. This path does not just contravene the purpose of the zipper clause; it contradicts Article III jurisdiction. Principles of justiciability and jurisdiction tell us that unripe claims that may later be mooted are dismissed. *See McDonough v. Smith*, 139 S. Ct. 2149, 2158–59 (2019) (noting the possibility of workarounds to filing deadlines, including stays and ad hoc abstentions, but declining to adopt such a requirement because, like previous cases decided by the Court, such a "scheme requiring 'conscientious defense attorneys' to file unripe suits 'would add to the burden imposed on courts, applicants, and the States, with no clear advantage to any'" (quoting *Panetti v. Quarterman*, 551 U.S. 930, 943 (2007))). Congress has not given explicit instructions contradicting these principles and creating a novel procedural system of judicial review for petitions from the Board. Consequently, we choose "another reasonable interpretation" of § 1252(b)(1), one that consolidates review and "does not produce these distortions and inefficiencies." *Panetti*, 551 U.S. at 943; *see also Argueta-Hernandez*, 87 F.4th at 706.

Consolidating orders of removal with CAT orders for streamlined review is consistent with the approach we have previously taken when presented with petitions pending the completion of withholding proceedings. Rather than stay our

review, we have dismissed those petitions as unripe, instructing petitioners to file a new petition when all reviewable agency proceedings are complete. *See* Order Granting Motion to Dismiss, *Delgado-Arteaga v. Lynch*, No. 15-1810 (7th Cir. Aug. 7, 2015) (granting a motion to dismiss because the petitioner remained in withholding-only proceedings and therefore the "removal order is not final for purposes of this court's review"). *But see Viracacha v. Mukasey*, 518 F.3d 511, 513 (7th Cir. 2008) (finding that ongoing agency proceedings do not render a removal order nonfinal so long as the ongoing proceedings are wholly within the discretion of the agency and thus not reviewable by the court of appeals).

Other circuits have similarly interpreted judicial review provisions in § 1252 to require a consolidated, streamlined review process, concluding that incomplete agency withholding proceedings prevent an order of removal from being final for purposes of judicial review. *See Abdisalan v. Holder*, 774 F.3d 517, 526 (9th Cir. 2014) (en banc) (holding that in mixed decisions in which the Board affirms some decisions by the immigration judge but remands others for further consideration, "no final order of removal exists until all administrative proceedings have concluded");[9] *see also Luna-Garcia*, 777 F.3d at 1186 (collecting cases affirming that "pending applications for relief render an order of removal nonfinal"); *cf. Kouambo v. Barr*, 943 F.3d 205, 214 (4th Cir. 2019) (collecting cases holding "that when the [Board] remands a case to the [immigration

---

[9] Although premature petitions pending at the time the Ninth Circuit decided *Abdisalan* were permitted to automatically ripen upon finality, the court dismissed any unripe petitions filed after that decision. 774 F.3d at 527.

judge] for background checks [in the process of granting with-holding-only relief], its decision is not a final order of removal for purposes of judicial review" until background checks are complete).

It would be easy enough for Congress to limit judicial review of CAT orders, just as Congress has limited judicial review of reinstated orders of removal to a narrow set of questions. But Congress has not done so. *Nasrallah*, 140 S. Ct. at 1692. Instead, it has preserved access to appellate review through a streamlined process. Therefore, we adopt the statutory interpretation preserving judicial review of administrative action in the streamlined fashion that the zipper clause requires. *Kucana*, 558 U.S. at 237; *see also Alonso-Juarez*, 80 F.4th at 1053.[10]

The Supreme Court's decision in *Santos-Zacaria* bolsters our interpretation. Although *Santos-Zacaria* dealt with a different provision of the INA, the Court's failure to even

---

[10] *Kucana* also counsels against a statutory interpretation that would "place in executive hands authority to remove cases from the Judiciary's domain." 558 U.S. at 237. If we were to interpret § 1252(b)(1)'s filing deadline to begin running at the reinstatement of a removal order, we could also be giving the agency unilateral power to preclude or at least hinder judicial review of CAT claims in almost all cases. *See Kolov*, 78 F.4th at 927–28 (Murphy, J., concurring). For example, the agency may separate removal decisions from withholding decisions, as it sometimes does, by affirming removal on appeal to the Board but remanding to the immigration judge for another hearing on withholding-related relief. *Id.* In such a case, the remand order might amount to a final order of removal for purposes of § 1252(b)(1) just like a reinstatement decision, despite the ongoing CAT and withholding proceedings, which almost always take more than 30 days. *Id.* We hesitate before finding that Congress vested the executive branch with the authority to shape the scope of our review so drastically.

mention § 1252(b)(1)'s filing deadline when discussing its jurisdiction is suggestive. 143 S. Ct. at 1111–12. There, after DHS reinstated Santos-Zacaria's removal order, she filed a petition for review in the Fifth Circuit more than 30 days after the reinstatement of that order but within 30 days of the conclusion of withholding proceedings. Respondent's Br. at 1–3, *Santos-Zacaria v. Barr*, No. 19-60355, (5th Cir. Aug. 29, 2019). When deciding *Santos-Zacaria*, the Supreme Court never raised the issue of jurisdiction as it must if there is a jurisdictional problem. While the Court's failure to address this deadline and when precisely the 30-day filing deadline begins to run is not dispositive, it does support our conclusion to similarly exercise jurisdiction.

Based on the statutory language, structure, and context of § 1252, we conclude that a reinstated order of removal is not final for purposes of judicial review until the agency has completed withholding proceedings. Only when those proceedings conclude, if the noncitizen is eligible for that review, has the agency finalized all mandatory review and "fully determined" the noncitizen's fate. *Arostegui-Maldonado*, 75 F.4th at 1140 (quoting *Luna-Garcia*, 777 F.3d at 1185). A contrary conclusion would contravene the express intent of Congress. Our own circuit's precedent is consistent with this interpretation, having long treated reinstated orders of removal as final once withholding proceedings are complete. We see no reason to upset that precedent.

Because F.J.A.P. filed his petition within 30 days of the completion of his CAT proceedings, we have jurisdiction to hear his petition and proceed to the merits.

**B. Board of Immigration Appeals Review**

F.J.A.P. petitions for review of the determination by the Board of Immigration Appeals that the immigration judge erred by granting CAT relief. He argues that the Board misapplied the clear error standard by which it reviews determinations of the immigration judge, 8 C.F.R. § 1003.1(d)(3)(i), and that even if the Board applied the correct standard, it should be reversed because it lacked substantial evidence.

The Board must review the immigration judge's factual findings "only for clear error, not *de novo*." *Estrada-Martinez v. Lynch*, 809 F.3d 886, 889 (7th Cir. 2015) (citing 8 C.F.R. § 1003.1(d)(3)(i) and *Matter of Z–Z–O–*, 26 I. & N. Dec. 586, 590 (BIA 2015)). Whether the Board properly applied that standard is a legal question, and we review de novo. *Id.* at 894.

Clear error review is a "highly deferential" standard. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1070 (7th Cir. 2013). The Board may not reweigh evidence; instead, it "must find that, on balance, the weight of the evidence so strongly militates against the immigration judge's finding that the Board is left with the definite and firm conviction that a mistake has been committed." *Estrada-Martinez*, 809 F.3d at 894–95 (cleaned up). To be clearly erroneous, a factfinder's conclusions must be "'illogical or implausible' or lack 'support in inferences that may be drawn from the facts in the record.'" *Id.* at 895 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 577 (1985)). When those conclusions are based "on a decision to credit a witness's testimony, that finding 'can virtually never be clear error' as long as the testimony is 'coherent and facially plausible,' 'not internally inconsistent,' and 'not contradicted by extrinsic evidence.'" *Id.* (quoting *Anderson*, 470 U.S. at 575).

We consider three factors to determine when, although purporting to apply clear error, the Board actually reviews de novo: "[A] Board decision that does not address the immigration judge's key factual findings, gives more weight to certain facts in the record than others, or fails to explain how the immigration judge's alleged errors showed a lack of logic, plausibility, or support in the record suggests the use of a standard of review less deferential than clear error." *Brito v. Garland*, 40 F.4th 548, 553 (7th Cir. 2022) (cleaned up) (citing *Soto-Soto v. Garland*, 1 F.4th 655, 659–60 (9th Cir. 2021)).

Acknowledging the proper standard of review, the Board stated that its conclusion was based on clear error review. But "merely parroting the proper standard of review does not immunize the Board's decision." *Brito*, 40 F.4th at 552. Instead, we look to the analysis to determine whether any factors exist that suggest it conducted de novo rather than clear error review.

In this case, each of those risk factors is present. Recall that the Board reversed the immigration judge's determination because it was based on "assumptions and a series of hypotheticals," in three ways: (1) The record did not support the inference that the man who called F.J.A.P. to demand $2,000 was a "high-ranking gang member." (2) There was insufficient evidence that the gang was interested in harming F.J.A.P. because they had not contacted him since he left El Salvador. (3) There was insufficient evidence that reporting the extortion to the police would put F.J.A.P. personally at risk of harm.

*Failure to address key factual findings*. The Board's first conclusion, that there was no evidence in the record to support the conclusion that F.J.A.P. was threatened by a high-ranking gang member, failed to address all factual findings. On its

own, "a determination that the evidence does not support the immigration judge's conclusion does not necessarily establish that the Board improperly weighed the evidence." *Brito*, 40 F.4th at 553. Here, the Board did not just declare an absence of evidence; it actively ignored the evidence relied upon by the immigration judge.

Dismissing the immigration judge's finding that F.J.A.P. was threatened by a high-ranking gang member, the Board explained, "Although the applicant points to information from the Department of State's country report from 2019 referencing the smuggling of cell phones into the prisons where gang members are housed, the record does not contain evidence reflecting that the caller was a high-level gang member." If the country report were the only evidence to support the immigration judge's finding, this would certainly be permissible clear error review, showing that the immigration judge had made unsupported inferences. But the immigration judge credited F.J.A.P.'s consistent and corroborated testimony of his personal experiences. The country report provides a backdrop to significant testimonial evidence. The record reflects that the gang members F.J.A.P. saw daily had been extorting him for $20 weekly; that two of those same gang members came to his home with a cell phone; that the man on the other end of the cell phone purported to be in jail; that the man on the other end of the phone demanded $2,000 on behalf of the gang; and that they would kill him if he did not give them the money. This story is completely consistent with his contemporaneously filed police report, which added that a gang member was to be sent to collect the money from F.J.A.P. the day after the threat.

These facts, bolstered by the State Department report noting that cell phones were smuggled into prisons for use by gang members, give rise to the immigration judge's reasonable inference that the person threatening F.J.A.P. had more power in the gang than those threatening him before. The Board refused to consider F.J.A.P.'s testimony—one indicator that this was de novo, rather than clear error, review.

*Reweighing the evidence*. The Board's second reason for reversing the immigration judge's conclusion, that there was insufficient evidence that the gang wanted to harm F.J.A.P. specifically, reweighed evidence indicative of de novo review.

In *Estrada-Martinez*, we determined that the Board had impermissibly reweighed the evidence. Although the Board "did not dispute the judge's findings" of previous torture, ongoing fear of torture, and recent threats made to the petitioner, it "discounted these facts" while giving more weight to others. 809 F.3d at 896. The Board engaged in the same impermissible evaluation here, discounting evidence the immigration judge found significant in F.J.A.P.'s case. It opined that F.J.A.P. "has not had any contact with the gang members who extorted him since 2014, and there is no indication that gang members have asked the applicant's family about him (even after the gang killed his cousin in 2015 for similarly not complying with gang demands)." The Board therefore concluded that there was no evidence suggesting the gang was interested in harming him.

Like in *Estrada-Martinez*, the Board discounted evidence of previous threats credited by the immigration judge and corroborated by the contemporaneous police report. But the immigration judge clearly thought that evidence significant, weighing heavily a threat to kill F.J.A.P. specifically, despite

the passage of time. Unlike in *Brito,* where fear of torture was speculative because of the lack of evidence that the gang was specifically interested in the petitioner or even knew his identity, 40 F.4th at 552, threats to F.J.A.P. were specific and targeted. All facts that led the immigration judge to credit F.J.A.P.'s reasonable fear of death upon return to El Salvador came from F.J.A.P.'s lived experiences—his weekly extortion and the personal threat at his home, demanding $2,000. Furthermore, like in *Estrada-Martinez,* the "fear of torture is consistent with the current conditions" in El Salvador. 809 F.3d at 896. The Board reweighed and discounted evidence in F.J.A.P.'s case instead of properly disputing that evidence with contrary facts from the record.

*Failure to explain the immigration judge's errors.* The Board's third critique of the immigration judge's finding perfunctorily rejected those findings without explanation. It stated simply that "there is insufficient record evidence indicating that the applicant is personally at risk of torture because he reported the extortion and the death threat to the police in 2014." The Board did not explain how the immigration judge's conclusion that F.J.A.P. would likely be tortured for having "the audacity to file a police report" is illogical, implausible, or lacks support. The Board did not explain why, in a country where gangs control much of the government—an assertion which was supported in the record by the State Department's country report—an individual complaint about the gang made *to the gang-controlled police* would not put a target on someone's back.

### III. Conclusion

For these reasons, we find that the Board erred by failing to apply the required clear error standard of review. Because

the Board failed to apply the correct standard of review, we need not reach whether substantial evidence supported its conclusion. In light of this error, we grant F.J.A.P.'s petition and remand to the Board of Immigration Appeals for reconsideration of the immigration judge's decision under the correct standard of review consistent with this opinion.

*      *      *

The petition for review is

GRANTED AND REMANDED.

BRENNAN, *Circuit Judge*, concurring in part and dissenting in part. F.J.A.P. illegally reentered the United States, so the Department of Homeland Security reinstated his prior order of removal. While awaiting removal, F.J.A.P. expressed fear of returning to his home country and was placed in withholding-only proceedings. The immigration judge granted F.J.A.P. withholding-only relief, but the Board of Immigration Appeals reversed. F.J.A.P. petitioned this court for review, challenging the Board's decision. Because F.J.A.P. filed his petition for review more than 30 days after the reinstatement decision, and that filing deadline is jurisdictional, I would dismiss his petition for lack of jurisdiction.

## I

The Immigration and Nationality Act, several regulations, and two recent Supreme Court opinions provide the rules for this decision. For clarity, I briefly review those.

First, we look to the statutes and regulations. The INA provides for the removal of aliens and judicial review of that removal. Title 8 U.S.C. § 1252 requires a "final order of removal" for judicial review. An "order of removal" is one "concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A). It becomes final at the conclusion of Board review or when the time for seeking Board review has expired. *Id.* § 1101(a)(47)(B). An alien must file a petition for review "not later than 30 days after the date of the final order of removal." *Id.* § 1252(b)(1).

With a final order of removal, we can review "all questions of law and fact … arising from any action taken or proceeding brought to remove [the] alien from the United States." *Id.* § 1252(b)(9) (zipper clause); *see Guerrero-Lasprilla v.*

*Barr*, 598 U.S. ——, 140 S. Ct. 1062, 1070 (2020). This includes certain questions arising from CAT orders which are "zipped" with the reviewable final order of removal.

After an alien reenters illegally, the "prior order of removal is reinstated from its original date." 8 U.S.C. § 1231(a)(5). Section 1231(a)(5) expressly forbids relief and states "the alien shall be removed under the prior order."

In addition to these statutes, certain federal regulations apply, which themselves implement treaty obligations. Those regulations allow limited relief for illegal reentrants. Under those regulations, an alien may present evidence to an asylum officer, who will determine whether the alien has a "reasonable fear" of persecution or torture in his home nation. 8 C.F.R. § 241.8(e). These "reasonable fear" proceedings are called "withholding-only" proceedings, through which an alien can seek either statutory relief or relief under the Convention Against Torture (CAT); the latter applies here.

Next, two recent Supreme Court cases guide us. In *Nasrallah v. Barr*, 590 U.S. ——, 140 S. Ct. 1683 (2020), the Court addressed whether a court of appeals could review factual findings concerning a criminal alien's final order of removal and CAT order. 140 S. Ct. at 1689. For criminal aliens, 8 U.S.C. § 1252(a)(2)(C) forbids judicial review of a final order of removal. The Court held that § 1252(a)(2)(C) bars judicial review of an alien's factual challenge to a final order of removal, but that bar does not apply to a CAT order because it is not a final order of removal. *Nasrallah*, 140 S. Ct. at 1691.

In *Nasrallah*, the Court clarified the meaning of final order of removal in § 1252, citing § 1101(a)(47)(A). 140 S. Ct. at 1692. Section 1101(a)(47)(A) defines an "order of deportation" as

the order "concluding that the alien is deportable or ordering deportation."[1] The Court concluded that rulings which do not "affect the validity of the final order" of removal are not part of the order. 140 S. Ct. at 1692. A CAT order:

> does not disturb the final order of removal. An order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country. But the noncitizen still may be removed at any time to another country where he or she is not likely to be tortured.

*Id.* at 1691 (cleaned up). So, a CAT order is not a final order of removal and cannot be reviewed independently. *Id.*

Further, in *Johnson v. Guzman Chavez*, 594 U.S. ——, 141 S. Ct. 2271 (2021), the Court considered whether to classify withholding of removal requests by those subject to a reinstatement decision under 8 U.S.C. §§ 1226 or 1231. 141 S. Ct. at 2280. Section 1226 applies to an alien "pending a decision on whether the alien is to be removed." Section 1231 applies after an alien has been ordered removed. Section 1226 entitles aliens to hearings as to whether they should be released on bond; § 1231 does not provide the same process.

The Court ruled that a decision to withhold removal is not an order of removal. *See Guzman Chavez*, 141 S. Ct. at 2287–88. The Court also stated that a reinstatement decision is administratively final as soon as it is issued, and "the finality of the order of removal does not depend in any way on the outcome

---

[1] As the majority opinion notes, *see supra* at 7, the INA uses "order of removal" and "order of deportation" interchangeably.

of the withholding-only proceedings." *Id.* at 2287. In *Guzman Chavez*, the Court defined finality by citing *Nasrallah*, which cited to "order of removal" as a defined term in the INA under 8 U.S.C § 1101(a)(47). *See Guzman Chavez*, 141 S. Ct. at 2288. In addition, the Court expressly left open the question whether a reinstatement decision is a final order of removal subject to review at all. *Id.* at 2285 n.6.

In the wake of these two recent Supreme Court decisions, there have been numerous inter- and intra-circuit splits on this jurisdictional issue. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 190–93 (2d Cir. 2022); *but see* Order at 2, *Cerrato-Barahona v. Garland*, No. 22-6349 (2d Cir. July 12, 2023), ECF No. 22; Order at 2, *Castejon-Paz v. Garland*, No. 22-6024 (2d Cir. July 12, 2023), ECF No. 25; *Martinez v. Garland*, 86 F.4th 561, 568 (4th Cir. 2023); *Martinez*, 86 F.4th at 572–74 (Floyd, J., concurring); *Argueta-Hernandez v. Garland*, 87 F.4th 698, 705–06 (5th Cir. 2023) (reconsidering and overruling *Argueta-Hernandez v. Garland*, 73 F.4th 300, 302 (5th Cir. 2023)); *Ruiz-Perez v. Garland*, 49 F.4th 972, 976 (5th Cir. 2022); *but see Ruiz-Perez*, 49 F.4th at 980–86 (Oldham, J., dissenting); *Kolov v. Garland*, 78 F.4th 911, 918–19 (6th Cir. 2023); *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1056 (9th Cir. 2023); *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1143 (10th Cir. 2023); *but see Arostegui-Maldonado*, 75 F.4th at 1148–51 (Tymkovich, J., concurring).

And in a number of cases pending before this court, the government has changed its position—sometimes more than once—on when an order of removal becomes final and whether the filing deadline in 8 U.S.C. § 1252(b)(1) is jurisdictional. Until approximately 2022, the government consistently took the position that an alien may timely file a petition to challenge a decision in a withholding-only proceeding within

30 days of that decision. Then, the government argued that a timely petition for review must be filed within 30 days of the reinstatement decision. Later, the government attempted to switch positions in cases before our court, maintaining its interpretation of the deadline for filing a petition, but concluding that the deadline was not jurisdictional and that it had waived, not forfeited, its enforcement.

We should reconsider our approach to this jurisdictional question in light of the Court's decisions.

## II

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This court has an "independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

To fulfill that obligation, we must answer three questions. First, does either a CAT order or a reinstatement decision qualify as a removal order? Second, is the petition for review filing deadline jurisdictional? And third, did F.J.A.P. timely file his petition for review?

## A

This court has jurisdiction to review only when there is a final order of removal. § 1252(a)(1). So, the first question for this case is whether a CAT order or a reinstatement decision is an order of removal.

*1. A CAT order is not an order of removal.*

Because withholding-only relief addresses where an alien may be removed to, not whether an alien is removable, a CAT order is not an order of removal. *Guzman Chavez*, 141 S. Ct. at

2285–86; *Nasrallah*, 140 S. Ct. at 1691. The withholding-only "determination neither 'disturb[s] the final order of removal,' nor 'affect[s] [its] validity.'" *Guzman Chavez*, 141 S. Ct. at 2288 (quoting *Nasrallah*, 140 S. Ct. at 1691). The removal order "remains in full force" and the agency "retains the authority to remove the alien to any other country authorized by the statute." *Id.* at 2285.

> *2. A reinstatement decision may not be an order of removal, but under our current precedent, I presume that it is.*

Courts have questioned whether a reinstatement decision is an order of removal. *See Guzman Chavez*, 141 S. Ct. at 2285 n.6 (leaving open this question); *Martinez*, 86 F.4th at 568 (questioning whether a reinstatement decision is a final order of removal); *Ruiz-Perez*, 49 F.4th at 976 (same); *Bhaktibhai-Patel*, 32 F.4th at 195–96 (same). The reinstatement decision is the result of an expedited process for those who, after already having been removed, reenter the United States without authorization. *See* 8 U.S.C. § 1231(a)(5). That statute provides:

> Reinstatement of removal orders against aliens illegally reentering

>> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the *prior order* of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien *shall be removed under the prior order* at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added). DHS has promulgated regulations outlining the reinstatement process. *See* 8 C.F.R. § 241.8(a)–(c). "[T]he agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." *Guzman Chavez*, 141 S. Ct. at 2282.

A reinstatement decision does not fit within the statutory definition of a removal order. The language of § 1231(a)(5) distinguishes between an "order of removal" and the reinstatement decision. The INA and regulations implementing the INA repeat this distinction throughout. *See, e.g.*, 8 C.F.R. § 208.31(a) (distinguishing between an alien who is "ordered removed" and an alien whose "removal order is reinstated"). For example, § 1231(a)(5), states, "the prior order of removal is reinstated." Under this provision, a new order of removal is not made; instead, the prior order is reinstated. The order of removal is the initial order when the alien first illegally entered the country and was removed, not the later decision to reinstate the prior order of removal. *Nasrallah* states, "final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." 104 S. Ct. at 1691.[2]

---

[2] F.J.A.P. argues that a reinstatement decision is a removal order because "order of deportation" as defined in in § 1101(a)(47)(A) says a removal order is any order ordering deportation. F.J.A.P. points to the last page of the Board's withholding-only decision, which states F.J.A.P. is "ordered removed." Oral Argument at 29:48–30:17.

But the Board did not discuss the reinstatement decision. Instead, the Board said the withholding-only decision does not affect the

Although, as explained above, the reinstatement decision may not be an order of removal, caution counsels against reaching that conclusion. *Guzman Chavez* left open this question, *see* 141 S. Ct. at 2285 n.6, and this court's precedent presumes that a reinstatement decision is a removal order, *see Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 800 (7th Cir. 2005). So, as does the majority opinion, I conclude that a reinstatement decision is a final order of removal subject to judicial review under § 1252(b)(9).

**B**

The second question is whether the petition for review filing deadline is jurisdictional. The relevant statute, 8 U.S.C. § 1252(b)(1), grants 30 days to seek judicial review of a final order of removal.

I join the majority's holding that the filing deadline in § 1252(b)(1) is jurisdictional. In *Stone v. INS*, 514 U.S. 386 (1995), the Court so held. *Id.* at 405. In *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), the Court considered whether the administrative exhaustion provision in § 1252(d)(1) was

---

reinstatement decision or the prior order of removal that has been reinstated. As the Court held in *Nasrallah* and reiterated in *Guzman Chavez*, a CAT order is not a final order of removal. *See Nasrallah*, 140 S. Ct. at 1692; *Guzman Chavez*, 141 S. Ct. at 2285–86. As F.J.A.P. points out, the Board's decision states he will be "ordered removed from the United States to El Salvador." The Board's decision denying withholding-only relief does not affect the validity of the final order of removal, however. *See Nasrallah*, 140 S. Ct. at 1692. The CAT order just confirms that F.J.A.P. is now "ordered removed from the United States to El Salvador." The only relief that could be granted in withholding-only proceedings was to prevent F.J.A.P. from being sent to El Salvador, which was denied.

jurisdictional. 598 U.S. at 417. The Court held that it was not. *Id.* at 423. In dicta, the Court opined that its jurisdictional holding in *Stone* might not be binding precedent, and that the time to file a petition for review might be a claims-processing rule instead. *See id.* at 421 (dicta).[3]

As the Court stated in *Santos-Zacaria*, *Stone* was decided at a time when the Supreme Court used the word "jurisdiction" more loosely than it does under current practice. *Id.* And, under current practice, a time limit for seeking judicial review of an administrative decision would likely not be called jurisdictional. *See, e.g., Arbaugh*, 546 U.S. at 515; *Arellano v. McDonough*, 598 U.S. 1, 6–14 (2023). But the Court in *Santos-Zacaria* decided not to apply *Stone* to the exhaustion provision in 1252(d)(1) because *Stone* did not specifically address the exhaustion requirement. *See Santos-Zacaria*, 598 U.S. at 421–22.

*Santos-Zacaria* did not overrule *Stone*. The Court in *Santos-Zacaria* distinguished the reasoning in *Stone* as applied to exhaustion provisions in the INA and given current practice, called into question the reasoning in *Stone*. *Santos-Zacaria* did not discuss filing deadlines at all. *See id.* In *Stone*, however, the Court did specifically consider filing deadlines—such as the one at issue here—and concluded that the filing deadline in the INA was jurisdictional. 514 U.S. at 405.

As an inferior court, we continue to apply *Stone* until overruled. *See, e.g., Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication,

---

[3] As the majority opinion points out, since *Santos-Zacaria*, this question has arisen in several circuits. They are split, even intra-circuit. *See supra* at 5–6.

overruled an earlier precedent. We reaffirm that if a precedent of this Court has direct application in a case yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.") (cleaned up). Because *Stone* ruled that the filing deadline in § 1252(b)(1) is jurisdictional, and *Stone* has not been overruled, I agree with my colleagues that the filing deadline in 8 U.S.C. § 1252(b)(1) is jurisdictional.

## C

The third question is whether F.J.A.P. timely filed his petition for review. I part ways with my colleagues here and I conclude that he did not.

A petition of review must be filed "not later than 30 days after the date of the final order of removal." § 1252(b)(1). The relevant dates for F.J.A.P.'s petition are:

- Prior final order of removal—December 16, 2008;
- DHS decision to reinstate prior final order of removal—January 22, 2020;
- Board decision reversing IJ grant of CAT relief, concluding withholding-only proceedings—June 14, 2021; and
- Petition for review filed with our court—July 13, 2021.

If the reinstatement decision was final when issued on January 22, 2020, F.J.A.P. had to petition for review by February 21, 2020. His petition was thus untimely. If, however, F.J.A.P.'s placement in withholding-only proceedings meant that the reinstatement decision was not yet final, F.J.A.P. had 30 days after the conclusion of the withholding-only

proceedings to file his petition, July 14, 2021, in which case his petition would be timely.

*1. Withholding-only proceedings do not affect the finality of reinstatement decisions.*

The 30-day filing deadline began to run on January 22, 2020, when DHS reinstated F.J.A.P.'s prior order of removal, so his petition for review was not timely. F.J.A.P.'s reinstatement decision has "long been 'administratively final.'" *Guzman Chavez*, 141 S. Ct. at 2285. An order of removal becomes final at the conclusion of the allowed administrative review. *See* § 1101(a)(47)(B); *see also Nasrallah*, 140 S. Ct. at 1691; *Guzman Chavez*, 141 S. Ct. at 2288 (applying *Nasrallah*'s interpretation of finality); *see also Bhaktibhai-Patel*, 32 F.4th at 192–93; *Martinez*, 86 F.4th at 568–71.

Section 1101(a)(47)(B) states that an order of deportation becomes "final" on the earlier of:

(i) a determination by the Board of Immigration Appeals affirming such order; or

(ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

The INA contains no other definition of "final." The Court in *Nasrallah* (interpreting § 1252) and *Guzman Chavez* (interpreting § 1231) used this definition. *See Guzman Chavez*, 141 S. Ct. at 2285 ("[O]nce the BIA has reviewed the order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien."); *Nasrallah*, 140 S. Ct. at 1691 ("In the deportation context, a final 'order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" (citing § 1101(a)(47)(A)) ("An order granting [withholding-

only] relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country. But the noncitizen still 'may be removed at any time to another country where he or she is not likely to be tortured.'" (citing 8 C.F.R. §§ 1208.16(f), 1208.17(b)(2))).

Using the definition in § 1101(a)(47)(B) here, a reinstatement decision is final when issued. A reinstatement decision receives no Board review. *See* § 1231(a)(5) ("the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed").

Withholding-only proceedings do not change this. This court has held as much, concluding that an order of removal is final and reviewable, even if a request for discretionary relief, such as a withholding-only decision, remains pending. *See Jimenez Viracacha v. Mukase*y, 518 F.3d 511, 513 (7th Cir. 2008).

The reinstatement decision and the order deciding withholding-only relief are separate decisions. In order to make the withholding-only decision, there must be a removal decision—here the reinstatement decision, which requires the removal of the alien—that can be withheld. A grant of withholding-only relief does not affect the validity—the legally binding effect—of a final order of removal. *Guzman Chavez*, 141 S. Ct. at 2288 (quoting *Nasrallah*, 140 S. Ct. at 1691). Again, withholding-only relief affects *where* an alien is removed to, not *whether* an alien is removable. *Id.* at 2285–86.

The indeterminacy as to where an alien may be removed does not affect whether DHS can remove the alien. Even if withholding-only proceedings begin, DHS can still deport the

alien to a third country (not his or her home country) at the conclusion of those proceedings, regardless of the outcome, because the only relief provided by withholding-only proceedings is changing where the alien will go. *Guzman Chavez*, 141 S. Ct. at 2283. Thus, although there may be further agency action, that action does not affect the finality of the order of removal.

Concluding otherwise runs counter to the reasoning in *Nasrallah* and *Guzman Chavez*. Recall, the Supreme Court rejected Guzman Chavez's argument that withholding-only proceedings keep a removal order "pending." *Id.* at 2285 ("Respondents misunderstand the nature of withholding-only proceedings."). Again, the Court has explained that even if withholding-only relief is granted, the removal order "is not vacated or otherwise set aside" but "remains in full force." *Guzman Chavez*, 141 S. Ct. at 2285. Withholding-only relief "'does not disturb the final order of removal,' 'affect the validity of the final order of removal,' or otherwise 'merge into the final order of removal.'" *Id.* at 2288 (quoting *Nasrallah*, 140 S. Ct. at 1691).

Moreover, in *Nasrallah*, the Court rejected the government's argument that in some cases no order deciding withholding-only relief was judicially reviewable: "Section 2242(d) of FARRA, enacted in 1998, expressly provides for judicial review of [withholding-only] claims together with the review of final orders of removal." *Nasrallah*, 140 S. Ct. at 1693. The Court did not say that a withholding-only decision prevents an order of removal from becoming final, and thus was reviewable as part of the administrative process with an order of removal.

Rather, the Court said an order deciding withholding-only relief was reviewable with a final order of removal. A reinstatement decision receives no such review and is final when issued. Just because an alien enters withholding-only proceedings does not mean "the reinstated order loses its prior finality." *Guzman Chavez*, 141 S. Ct. at 2287. So, under § 1252(b)(1), a petition for review of an order deciding withholding-only relief must be filed within 30 days of that reinstatement decision to be reviewable as part of that final order. F.J.A.P. failed to meet that deadline.

Last, per the majority opinion's interpretation of the INA statutes, a reinstatement decision could be final for purposes of detention under § 1231, but not final for purposes of judicial review under § 1252. That would run counter to the INA's single definition of when an order of deportation becomes "final," at § 1101(a)(47)(B).[4]

*2. Contrary readings of the statutes and caselaw are not persuasive.*

The majority opinion concludes the opposite, reasoning that: (1) § 1231 and § 1252 use different language—§ 1231 uses the term "administratively final," and § 1252 uses the term "final"—so the statutes must have different meanings; and (2) the Court left open the question of when an order is final under § 1252 in footnote 6 of *Guzman Chavez*.

---

[4] The majority opinion cites *Eke v. Mukasey*, 512 F.3d 372, 375–78 (7th Cir. 2008), as an example of our court exercising jurisdiction over a petition after withholding-only proceedings had received complete Board review. *See supra* at 20, 22. But *Eke* was issued a decade earlier than *Guzman Chavez* or *Nasrallah* and their rulings on these questions.

*i. A reinstatement decision, which receives limited adminis-*
*trative process that does not affect the validity of the deci-*
*sion, is final when issued.*

Under § 1252, the period to file a petition for review begins on "the date of the final order of removal." 8 U.S.C. § 1252(b)(1). So, as described above, there must be a final order of removal for judicial review.

A "final order of removal" under § 1252 is an order that has received all due administrative process. An order of deportation or removal is a defined term in the INA. *See id.* § 1101(a)(47)(A) ("(A) The term 'order of deportation' means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.") And when that order becomes final is also defined. *Id.* § 1101(a)(47)(B) ("(B) The order described under subparagraph (A) shall become final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.").

Here, the order of removal was a reinstatement decision, which was final when issued. Again, under § 1252, only a final order of removal is reviewable. Using the definition of § 1101(a)(47)(B), an order of removal is final when it has completed all due administrative process—"administratively final." A reinstatement decision is therefore final and reviewable by a court. Placement in withholding-only proceedings does not affect that.

Other statutes support this reasoning. For example, take the statute discussing the detention and removal of aliens. The removal period begins (i) when the order of removal becomes *administratively final*, (ii) if judicially reviewed, the date of the court's final order, or (iii) if the alien is detained or confined, when the alien is released. *See* 8 U.S.C. § 1231(a)(1)(B) (emphasis added). In § 1231, the modifier "administratively" reiterates that an order of removal becomes final under the INA when all due administrative process ends—in accord with the definition in § 1101(a)(47)(A) for when an order of removal becomes final. That is distinct from a later final order issued by a court, if judicial review is allowed. The Court in *Guzman Chavez* states this expressly: "By using the word 'administratively,' Congress focused our attention on the *agency's* review proceedings, separate and apart from any judicial review proceedings that may occur in a court." 141 S. Ct. at 2284. That is because the INA distinguishes between when an order of removal is final—receiving all due administrative process—and when a court issues a final order.

The penalties related to removal also support this reading. 8 U.S.C. § 1253(a)(1)(A), penalizes an alien who "willfully fails or refuses to depart from the United States within a period of 90 days from the date of the *final order of removal under administrative processes*, or if judicial review is had, then from the date of the final order of the court … ." (emphasis added). Again, a final order of removal—meaning, administratively final and reviewable by a court, if such review is allowed—is distinguished from a later final order of the court.

The INA often uses language to differentiate between when there is a final order of removal—as an agency's process is complete, and judicial review may be allowed—and when

there is a final order of the court after judicial review. It stands to reason that is why "administratively" is used in § 1231 but not elsewhere in that statute, such as in § 1252 where such a distinction is not necessary. Further supporting this conclusion is the INA's single definition of an order of deportation and when that order becomes final. 8 U.S.C. § 1101(a)(47). But there are references to two kinds of "final orders" in the INA—a final order of removal, and a final order of the court after allowed judicial review. *See, e.g., id.* §§ 1231(a)(1)(B), 1253(a)(1)(A), 1227(d)(1)(B) ("there is a final administrative denial of the application … after the exhaustion of administrative appeals").[5] The majority opinion places too much weight on "administratively," which is used in § 1231(a)(1)(B)(i) only as a modifier.

The majority opinion states that "under § 1231 an order is not 'final' until it has been reviewed in court[,]" thus creating a "impossible bind." But § 1231 does not state that a court must review an order for it to be final. Rather, the INA sets forth, several times, that for judicial review, what is required is an order of removal that received full agency process, *i.e.*, is "administratively final." Once administratively final, the final order of removal is reviewable by a court, and if judicial review is allowed, then there is a final order of the court. Judicial

---

[5] Elsewhere in the INA, judicial process is distinguished from administrative process. To differentiate between the same process at different levels of review, the Act uses modifiers like "judicial," "administrative," or "administratively." For example, § 1227(d)(1) describes a stay as "administrative." But § 1229c(f) and § 1231(a)(1)(B)(ii) discuss a judicial stay and use only the word "stay," without the modifier "administrative." *See also, e.g.*, 8 U.S.C. §§ 1160(e)(1), 1255a(f) (distinguishing between administrative and judicial review).

review does not affect the administrative finality of the underlying final order of removal.

A final order of the court is distinct from a final order of removal that may be subject to judicial review. An order of removal is final when "administratively final" and that finality "does not depend in any way on the outcome of the withholding-only proceedings." *Guzman Chavez*, 141 S. Ct. at 2287. Again, entering withholding-only proceedings does not keep a removal order "pending"; rather, it "remains in full force." *Id.* at 2285. Holding otherwise contradicts the expedited review process Congress created in § 1231(a)(5) for illegal reentrants to this country, as well as the Court's reasoning and conclusions in *Nasrallah* and *Guzman Chavez*.

> *ii. The Court left open whether a reinstatement decision is an order of removal, not when an order of removal is final.*

I do not read the Court in *Guzman Chavez* to have left open the question of when an order of removal is final under § 1252. In Guzman Chavez's Supreme Court brief, she argues that a reinstatement decision "is a new order of removal subject to judicial review," citing numerous circuit court opinions. *See* Brief for Respondent at 24–26 & n.8, *Johnson v. Guzman Chavez*, 594 U.S. ——, 141 S. Ct. 2271 (2021) (No. 19-897) ("Resp. Br."). The Court considered that argument in footnote 6 of its majority opinion. *See Guzman Chavez*, 141 S. Ct. at 2285 n.6. Reading footnote 6 alongside Guzman Chavez's arguments and citations clarifies which question the Court left open. Guzman Chavez argued that a reinstatement decision is a new final order of removal that is subject to judicial review. Resp. Br. at 24 & n.8. The Court speaks to these arguments in footnote 6:

[S]ome lower courts' interpretation of the phrase "final order of removal" as it is used in 8 U. S. C. § 1252(b)(1) requires that this Court adopt respondents' interpretation of § 1231 here. Brief for Respondents 24–26, and n. 8. We express no view on whether the lower courts are correct in their interpretation of § 1252, which uses different language than § 1231 and relates to judicial review of removal orders rather than detention.

*Guzman Chavez*, 141 S. Ct. at 2285 n.6. The footnote refers to the lower courts' decisions that a reinstatement decision was a new order of removal subject to judicial review under § 1252(b)(1). The Court left open the question whether reinstatement decisions were even final orders of removal. Footnote 6 therefore does not help F.J.A.P., either.

The citations in footnote 8 of Guzman Chavez's Supreme court brief support this conclusion. Every case cited there presumed that the court has appellate jurisdiction over the reinstatement decision under § 1252(b) as an order of removal. *Arevalo v. Ashcroft*, 344 F.3d 1, 9 (1st Cir. 2003) ("There is little doubt that we have appellate jurisdiction over the reinstatement of an order to deport an illegal reentrant. The reinstatement itself operates as the functional equivalent of a final order of removal."); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 144 (2d Cir. 2008) (reviewing a reinstatement decision); *Avila-Macias v. Ashcroft*, 328 F.3d 108, 110 (3d Cir. 2003) (holding the court had jurisdiction to review questions arising from a reinstatement decision); *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 105 (4th Cir. 2001) (holding a reinstatement decision was an "order of removal" subject to judicial review); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002) (holding that a reinstatement decision "is not literally an 'order of removal' [8

U.S.C. § 1252(b)] because it merely reinstates a previously is-sued order of removal or deportation" … but is a final order of the Immigration and Naturalization Service that may be re-viewed); *Warner v. Ashcroft*, 381 F.3d 534, 536 (6th Cir. 2004) (holding the court had jurisdiction to review a reinstatement decision because it was an order of removal reviewable under 8 U.S.C. § 1252(b)); *Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002) (holding the alien was "entitled to petition th[e] court for review of the [reinstatement decision]"); *Briones-Sanchez v. Heinauer*, 319 F.3d 324, 326 (8th Cir. 2003) (holding the court has jurisdiction to review a reinstatement decision under § 1252); *Ixcot v. Holder*, 646 F.3d 1202, 1206 (9th Cir. 2011) (holding the court had "jurisdiction to review final agency orders of removal, including reinstatement orders" under § 1252); *Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003) ("Although § 1252 speaks specifically of judicial review of 'orders of removal,' every circuit to ad-dress the question has found [Section] 1252 to cover review of reinstatement orders as well.") (alteration in original) (note that Guzman Chavez's brief specifically cites this quote); *Sar-miento Cisneros v. United States Att'y Gen.*, 381 F.3d 1277, 1278 (11th Cir. 2004) (reviewing a reinstatement decision)).

The Court's later discussion of these same pages in Guz-man Chavez's brief provides further clarity. There, the Court considered her argument that even if a reinstatement decision is final when issued, withholding-only proceedings reopen fi-nality. The Court disagreed, stating, "removal orders and withholding-only proceedings address two distinct ques-tions. As a result, they end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings." *Guz-man Chavez*, 141 S. Ct. at 2287.

On this point the Court remarked that administrative finality—all due administrative process being complete—makes an order of removal final. And a withholding-only proceeding does not keep a reinstatement decision from becoming final:

> Because the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise "administratively final" reinstated order of removal.

*Id*. at 2288.

*Santos-Zacaria* does not disturb this interpretation of *Nasrallah* and *Guzman Chavez*. *See supra* at 28–29. We may not draw conclusions from "drive-by jurisdictional rulings." *See, e.g.*, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 91 (1998). Not unless a jurisdictional issue is squarely confronted and addressed has a jurisdictional holding occurred. In *Santos-Zacaria*, the Court dealt with a different provision of the INA and § 1252(b)(1)'s filing deadline was never raised, so the Court did not confront the jurisdictional issue in this case.

*3. The presumption of reviewability does not change this result.*

Finally, the presumption of reviewability is just that: a presumption. Congress can foreclose judicial review. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349, 351 (1984); *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967) (citing cases), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). That presumption can be overcome by clear and convincing evidence of Congressional intent to preclude judicial review. *Rusk v. Cort*, 369 U.S. 367, 379–80 (1962), *abrogated on other grounds by Califano*, 430 U.S. at 105. With reinstatement

decisions, Congress specifically precluded review. Section 1231 uses the phrases: "not subject to being reopened or reviewed"; "shall be removed … at any time"; and "not eligible [for] and may not apply for any relief." A reinstatement decision is part of an expedited process without review for aliens who illegally reenter.[6]

### III

F.J.A.P. illegally reentered the United States, so his prior order of removal was reinstated. Because F.J.A.P. petitioned for review more than 30 days after the reinstatement decision, his petition was untimely. I agree with the majority opinion that the filing deadline for a petition for review is jurisdictional. Therefore, I conclude that our court does not have jurisdiction to consider F.J.A.P.'s petition, and I would dismiss this petition. For these reasons, I respectfully concur in part and dissent in part.

---

[6] The majority opinion suggests that this logic forecloses review of withholding-only proceedings associated with reinstatement decisions. *See supra* at 25. The issue for F.J.A.P. is not what can be reviewed, but when that review can take place.